IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. §2254

| | | |
|---|---|---|
| JODY LEE MILES | * | |
| Petitioner | * | |
| v. | * | Civil Court Action No: |
| SIMON WAINWRIGHT, WARDEN MCAC, | * | |
| Respondent | * | |
| * * * * * * * * | * | * * * * * * * * |

## MOTION AND MEMORANDUM OF LAW SEEKING STAY AND ABEYANCE OF 28 U.S.C. §2254 PROCEEDINGS PURSUANT TO RHINES V. WEBER, 544 U.S. 269 (2005)

Petitioner, Jody Lee Miles, who is presently incarcerated, through counsel, Robert W. Biddle, Nathans & Biddle, L.L.P., Erika Alsid Short, and Ranak K. Jasani, Whiteford, Taylor & Preston L.L.P., hereby submits this Motion and Memorandum of Law Seeking Stay And Abeyance of 28 U.S.C. Section 2254 Proceedings Pursuant to Rhines v. Weber, 544 U.S. 269 (2005).

## SUMMARY OF REASONS THIS COURT SHOULD GRANT A STAY AND ABEYANCE

On July 12, 2007, less than one month ago, this Court appointed Nathans & Biddle, L.L.P., by Robert W. Biddle, Esquire, as new lead counsel in this matter, following the untimely death of prior lead counsel, Fred Warren Bennett, Esquire, on

1

July 1, 2007. The deadline to file for relief pursuant to 28 U.S.C. §2254 is Friday, August 17, 2007. With the appointment of Mr. Biddle, Mr. Miles now has his third lead counsel in twenty-four months in this ten year old capital case as Mr. Bennett's predecessor, William Kanwisher, Esquire, stepped aside for health reasons in the fall of 2005.

Mr. Miles faces the death penalty for the April 1997 shooting of Edward Atkinson in an isolated wooded area off of Route 50 in Wicomico County, Maryland. Undersigned counsel recently learned for the first time, through Dr. Neil Blumberg's examination last week, that Petitioner was a victim of child sexual abuse committed repeatedly by an adult male as he grew up and, further, that Petitioner is suffering from Post Traumatic Stress Disorder arising from that abuse and other childhood experiences. See **Exhibit 3** and exhibits attached thereto. The victim was known to be bisexual and the site of the shooting was a well known homosexual meeting spot. Despite prior less specific indications of a possible connection between Petitioner's life experiences and the crime, the State and defense tried this case in 1998 on the theory that Petitioner encountered Mr. Atkinson to collect a debt owed to a loan shark, as Petitioner stated in his custodial statement. However, the loan shark has never been found or positively identified. The State claimed that the shooting occurred in the course of a robbery, rendering the offense, as found by the jury, death eligible.

Despite a history of family pathology and disorder, documented a decade ago, Dr. Blumberg was the first forensic psychiatrist to examine Petitioner, and did so only

after undersigned counsel entered the case. Petitioner was previously examined by a psychologist in 1997, who neither wrote a report nor testified, and by a neurologist in the past four years.

An additional deficiency in the investigation of this case so far is that a woman, Mary Snively, who may have accompanied Petitioner to the crime scene, and attempted to avoid being observed by a passing motorist, Steve Bailey, has never been located and interviewed by the defense, although her ex-husband was found in Anne Arundel County and reported receiving child support payments from her. Her testimony explaining how Petitioner and the victim encountered each other at the isolated site of Mr. Atkinson's death is essential to developing a connection between Petitioner's life experiences and Mr. Atkinson's death, a connection which is fundamental to developing effective mitigation to defend against a death sentence and which inexplicably and prejudicially has never been fully developed by the defense in the case.

In addition to these claims arising from new investigative issues identified and pursued in the past few weeks, two other issues which could not have been previously raised must be litigated in Maryland courts before all claims to be heard by this Court can be deemed exhausted as required by federal law. First, Petitioner received a death sentence when the jury found that the sole aggravating factor, committing a murder while he was robbing Mr. Atkinson, outweighed several mitigating factors by a

preponderance of the evidence. However pursuant to <u>Cunningham v. California</u>, 127 S. Ct. 856 (2007), entered on January 22, 2007, which voided a sentencing scheme in material respects identical to Maryland's death penalty sentencing scheme, the use of a preponderance standard rather than a beyond a reasonable doubt standard in the weighing process violated Petitioner's Sixth Amendment rights.    Second, Joseph Kopera, the disgraced and now deceased former Maryland State Police firearms examiner committed perjury at Petitioner's trial regarding his credentials and testified that a recovered weapon was among the family or class of firearms used to kill the victim. Mr. Kopera's perjured testimony came to light only recently.

All of these claims, as well as an additional claim arising from possible misuse of tainted wiretap evidence in obtaining the grand jury's indictment, require further development in the state courts before the claims are exhausted and ready for review by this Court.

The Supreme Court has provided specific guidance to the parties and the Court in these circumstances. The Petition pursuant to 28 U.S.C. §2254 filed today, August 13, 2007, should be stayed and held in abeyance until all claims have been exhausted by presentation to the Maryland courts. <u>See</u> <u>Rhines v. Weber</u>, 544 U.S. 269 (2005). If the Maryland courts do not provide relief, then the exhausted claims in their entirety should be addressed by this Court. Prior to that time, proceedings should be stayed as directed by <u>Rhines</u>.

# I. PROCEDURAL HISTORY

## A.   The Procedural Path Petitioner Followed To This Court Including A Statement Of The Case.

### 1.   Statement Of The Case.

On April 4, 1997, Edward Joseph Atkinson's body was found in a wooded area on Old Bradley Road in Wicomico County, Maryland.   During the subsequent investigation, the police learned that Mr. Atkinson's credit cards had been used at several locations after his reported disappearance.  A composite sketch of a white male suspect, approximately 6'1" to 6'3" tall, having medium length dirty blonde to brown hair and wearing white jeans with a white shirt and cowboy boots was developed and circulated on the local news stations.

On April 15, 1997, a Caroline County, Maryland resident recorded a cellular telephone conversation that he intercepted on a scanner.  The taped conversation was between an unidentified man and an unidentified woman and was turned over to police.  After listening to the taped conversation, the police determined that the male caller was Petitioner and that the female caller was his wife, Jona Miles.  Using the information from the tape of the intercepted cellular conversation, the police obtained a search and seizure warrant for the mobile home residence of Mrs. Miles.  When questioned, Mrs. Miles agreed to show the police where she had disposed of a handgun and also provided the police with a description of Mr. Miles and the car he would be driving.  Police later found a handgun in the area of where Mrs. Miles said it would be,

and at trial the State' ballistics expert, Joseph Kopera, testified that the weapon

belonged to the same class or family of firearms which had been used to kill the victim

(Mr. Kopera's perjurious testimony at Petitioner's trial regarding his credentials was

only discovered in March, 2007). Later that evening, police arrested Petitioner and he

was taken to the police station and interrogated.  Petitioner was indicted and charged

on May 9, 1997 of felonious homicide, robbery, robbery with a deadly weapon, first-

degree assault and use of a handgun in a crime of violence in connection with the April

2, 1997 death of Mr. Edward Atkinson in Mardela Springs, Wicomico County,

Maryland.

> **2.    Petitioner's Trial And Sentencing Hearing In The Circuit Court For Queen Anne's County, Maryland.**

Tom Saunders, Esquire, of the Maryland OPD entered his appearance as lead

counsel for Mr. Miles.  Based on a Suggestion of Removal due to extensive pre-trial

publicity, the case was removed from the Circuit Court for Wicomico County to the

Circuit Court for Queen Anne's County, Maryland on October 2, 1997, after the State of

Maryland filed a Notice of Intention to Seek the Death Penalty on July 29, 1997.

A number of pre-trial motions were filed by counsel on behalf of Petitioner.

Defense counsel filed a Motion to Suppress the wiretap information which was granted

in part and denied in part. Although Cpl. Benton, the lead detective in the investigation,

testified in the grand jury proceeding on or prior to May 7, 1997, no motion was filed to

obtain the grand jury transcript to determine whether the grand jury heard evidence

directly or indirectly from the illegal recording of the telephone call which the trial court later suppressed. Motions to suppress Petitioner's custodial statement taken in violation of Petitioner's <u>Miranda</u> rights, to suppress evidence stemming from the search of Petitioner's vehicle, and evidence related to the seizure of the handgun were denied.

Prior to trial, Mr. Saunders had Petitioner examined by a psychologist, Dr. Bellow, but she wrote no report and efforts to date by undersigned counsel to obtain her records have been unsuccessful. Mr. Miles was not examined by a forensic psychiatrist retained by the defense during Mr. Saunders' tenure on the case.

On March 9, 1998, a jury was selected. The State of Maryland's theory was that Petitioner either killed Mr. Atkinson during the course of a robbery, or that he had committed a willful, deliberate and premeditated murder. Petitioner's defense counsel conceded that Mr. Atkinson was killed by Petitioner, but contended that Petitioner's actions amounted to no more than second degree murder.

Trial lasted from March 9, 1998 until March 12, 1998. The State called twenty-three witnesses in its case-in-chief, including Mr. Kopera (the Maryland State Police firearms examiner), Mr. Atkinson's mother, his brother (who assisted with the investigation in the case and was the first to locate the victim's body), sales associates who waited on Mr. Atkinson while he was shopping the day that he was killed, Maryland State Police crime scene technicians and police officers involved in the investigation, employees of a gas station where Mr. Atkinson's credit card was used

after his death, among others.  Notably, the State called Jona Miles, Petitioner's wife, who waived her marital privilege. Petitioner's defense counsel called two witnesses, the lead investigator in the case who identified the rest area where Petitioner allegedly encountered Mr. Atkinson as a known meeting place for bisexual and homosexual men, and recalled a witness originally called by the State who was a friend of Mr. Atkinson and testified that he frequently borrowed money from others.  Although Petitioner gave a statement to police offering a vague theory of self-defense that was presented to the jury, and although his wife led police to the purported murder weapon, at trial, and later, the evidentiary record in court fails to show conclusively how Petitioner ended up at the rest area stop and how he came to meet with the victim.

In closing argument, the State argued that premeditation was demonstrated by the manner in which Mr. Atkinson was killed, and that Petitioner was guilty of felony murder by the mere fact that Mr. Atkinson was robbed as part of the incident. Petitioner's defense counsel argued that Petitioner did not intend to rob Mr. Atkinson and that the crime was not premeditated.  Defense counsel argued that Petitioner was scared and killed Mr. Atkinson and that the crime amounted to second degree murder only.  During deliberation the jury requested clarification of the definitions of felony murder, premeditated murder and property.  The Court reinstructed the jurors as to all crimes alleged.  The jury subsequently acquitted Petitioner of first-degree premeditated

murder, but convicted him of felony murder, robbery with a deadly weapon, robbery and use of a handgun in the commission of a crime of violence.

The sentencing hearing occurred over the course of two days from March 17-18, 2005. The State presented the testimony of Dorothy Atkinson, the victim's mother. Petitioner's defense counsel presented the testimony of Donald Steil (a private investigator who interviewed several corrections officers and several other witnesses regarding Petitioner's personal history), Lisa Hopkins (Petitioner's older sister who briefly testified about their impoverished childhood and provided general statements regarding physical and emotional abuse by their mother), Carrie Cooper (the mother of Petitioner's daughter who testified that she had never seen Petitioner lose his temper and that she knew him to consume large amounts of alcohol), and Ann Stanfield Hagert (a social worker who conducted a purported psycho-social assessment of Petitioner and concluded that he was raised in a chaotic, abusive and impoverished family).

Petitioner provided an allocution. After weighing the sole aggravating factor of felony murder versus the mitigating factors presented by Petitioner's defense counsel using a preponderance of the evidence standard as instructed by the trial court, the jury sentenced Petitioner to death.

### 3.    The Direct Appeal To The Court Of Appeals Of Maryland.

A timely appeal was noted to the Court of Appeals of Maryland. Lead counsel on appeal was Nancy Forster, Esq., of the Maryland OPD. Petitioner's counsel sought

reversal on the following grounds: (1) that the trial court committed error in denying, in part, Petitioner's motion to suppress pursuant to Maryland's Wiretapping Act, (2) that the trial court erred in failing to fully disclose the contents of a jury note sent to the judge after seven hours of sentencing deliberations, (3) that it was improper for the trial court to instruct the jury that unanimity is an absolute prerequisite and fail to instruct the jury that it could report its lack of unanimity when, after seven hours of deliberation, the jury asked the trial court what to do if they were not unanimous, (4) that the trial court improperly limited what the jury could consider as mitigating evidence under section 8(b) of the sentencing form in instructions provided to the jury, (5) that the trial court erred in refusing to instruct the jury during sentencing that it must find, as a non-statutory mitigating circumstance, that Petitioner was acquitted of premeditated murder, (6) that there were ambiguities and inconsistencies present in the sentencing verdicts which required that the death sentence be vacated, (7) that the trial court erred in excusing four jurors for cause, and (8) that the trial court abused its discretion in refusing to grant defense counsel's motion for mistrial when it was discovered that the jurors had seen Petitioner in shackles.

After briefing and oral argument, the Court of Appeals affirmed Petitioner's convictions and sentence in a decision of four to three. See Miles v. State, 365 Md. 488, 781 A.2d 787 (Md. 2001). With regard to the wiretap issue, while the Court of Appeals determined that the recording of the telephone call itself and all evidence seized by the

police pursuant to the execution of a search warrant for Jona Miles' property was properly suppressed, it held that the trial court properly admitted the murder weapon and its accessories at trial because Petitioner's voluntary actions in leading the police to them purged the taint from the original unlawful disclosure of the taped cellular phone conversation.  A Petition for Writ of Certiorari was filed by the Maryland OPD and subsequently denied by the United States Supreme Court on February 25, 2002.  See Miles v. Maryland, 122 S.Ct. 1175 (2002).

4.    **Post-Conviction Proceedings.**

In 2002, William Kanwisher, Esquire, now an investigator for the Federal Public Defender for this District, was appointed as lead post conviction counsel for Petitioner. On September 18, 2002, Mr. Kanwisher filed a Petition for Post Conviction Relief in the Circuit Court for Queen Anne's County, Maryland.   The issues raised were trial counsel's failure to:   conduct adequate voir dire, exhaust peremptory challenges, preserve the factual basis for a mistrial request, investigate exculpatory evidence, examine police investigation of other suspects, present a consistent defense theory, present testimony of Steve Bailey (an independent witness who saw a second suspect at the scene), thoroughly investigate Petitioner's family relationships, present mitigation evidence, request an instruction that the jury may consider Petitioner's allocution in penalty deliberations, object to improper closing argument, object to the Court's unanimity instruction, object to the Court's evidentiary instruction, argue that the jury's

11

verdict was inconsistent, and to request inspection of a jury note. The Petition also contended that appellate counsel neglected to argue the trial court's error in applying the correct standard of proof at sentencing, to argue the inappropriate nature of statements made by the State in closing argument, and to argue insufficiency of evidence. The Petition identified trial court error in applying an incorrect standard of proof at sentencing, imposing the death penalty in light of its inequitable application, in failing to suppress all evidence derived from the inadmissible wiretap, in failing to disclose to the defense the contents of a jury note, in giving the jury an erroneous unanimity instruction, and in giving the jury an improper restriction on non-statutory mitigators.

A Supplemental Pro Se Petition for Post-Conviction Relief was filed by Petitioner, raising the issue of a Brady violation in light of the victim's brother's alteration of, or tampering with, Petitioner's telephone records and the State's failure to disclose this information.

Throughout 2004, and into 2005, the circuit court record, including the docket sheet, shows that Mr. Kanwisher was attempting to obtain new co-counsel as then co-counsel had stated that he was unable to devote the necessary time to the case. The record shows that those efforts to secure new co-counsel lasted a year or more and, while they were underway, Mr. Kanwisher learned in the spring of 2005 that he had a severe heart condition which could be exacerbated by stress. In the fall of 2005, Mr.

Kanwisher withdrew as lead counsel for Petitioner due to his heart condition and left the practice of law. Although Mr. Kanwisher arranged for Petitioner to be examined by a neurologist, Petitioner was not examined by a psychiatrist or a psychologist engaged by the defense during Mr. Kanwisher's tenure as lead counsel.  Mr. Kanwisher was succeeded by Fred Warren Bennett, Esq., who was assisted by two young associates from the Baltimore law firm of Whiteford, Taylor & Preston, L.L.P., as directed by him.

Some months following Mr. Bennett's entry of appearance in the fall of 2005, a Second Supplemental Petition for Post-Conviction Relief was filed by counsel on Petitioner's behalf on January 9, 2006.  The issues raised were the trial counsel's failure to move for a judgment of acquittal on the felony murder count based on Metheny v. State, 359 Md. 576 (2000); trial counsel's failure to object to the court's instruction on felony murder predicated on robbery in light of State v. Allen, 387 Md. 389 (2005) (holding that an "afterthought robbery" is not a predicate felony for the felony murder rule); trial counsel's failure to object to the prosecutor's rebuttal closing argument that incorrectly stated the law on robbery as a predicate for felony murder; trial counsel's failure to call a witness from the Maryland Parole Commission to explain to the jury the meaning of a sentence of life without parole; and trial counsel's failure to object to the court's sentencing instruction on the sole aggravating circumstance, robbery, when the trial court failed to instruct the jury that an "afterthought robbery" did not qualify as an aggravating circumstance.

The post-conviction hearing was held in the Circuit Court of Maryland for Kent County on June 22-23, 2006, where Mr. Bennett served as Mr. Miles' lead counsel. Post-hearing Memoranda were filed by both parties. The Post-Conviction Court (Price, J.) denied the Petition by Memorandum Opinion and Order filed on August 21, 2006. On August 29, 2006, Petitioner filed a Motion to Alter or Amend Judgment, alleging that the Circuit Court had, in many instances, failed to accurately recount the factual testimony and had improperly applied the standards set forth in Strickland and its progeny. The Motion was denied by the Circuit Court for Kent County on September 27, 2006.

On October 25, 2006, counsel for Petitioner filed an Application for Leave to Appeal from the Denial of Post-Conviction Relief and an unopposed Motion for Leave to Supplement Application for Leave to Appeal. On October 26, 2006, the Court of Appeals of Maryland granted Petitioner's Motion to Supplement the Application for Leave to Appeal within sixty days. Petitioner subsequently filed a Supplement to Application for Leave to Appeal on December 18, 2006, a Supplemental Citation of Authority on January 9, 2007, and a Second Supplemental Citation of Authority on January 24, 2007. The State of Maryland filed an Opposition to the Application for Leave to Appeal on February 15, 2007. The Court of Appeals of Maryland denied Petitioner's Application for Leave to Appeal in a one-page Order dated March 13, 2007.

14

Petitioner filed a Petition for Writ of Certiorari with the United States Supreme Court on June 11, 2007. That Petition is still pending.

Meanwhile, on July 1, 2007, Mr. Bennett was killed in a car accident, at a time when the §2254 Petition was due to be filed in about six weeks but had not yet been prepared at his direction. Mr. Miles was not examined by a psychiatrist or a psychologist engaged by the defense during Mr. Bennett's tenure as lead counsel for Mr. Miles.

On July 12, 2007, this Court appointed Robert W. Biddle, Esquire, as lead counsel to Mr. Miles. Neil Blumberg, M.D., was subsequently retained with the permission of this Court to conduct an initial examination of Mr. Miles, the first such examination by a psychiatrist of any type reporting to defense counsel. Dr. Blumberg's preliminary analysis and conclusions and observations provided by a defense psychologist, Janice Stevenson, PhD, are attached as exhibits to motion to reopen proceedings in the circuit court, which are attached as an exhibit to this Memorandum of Law.

Thus, a Motion to Reopen and Memorandum of Law in Support has contemporaneously been filed on behalf of Petitioner in the Circuit Court for Queen Anne's County (Case No. CR4789PC). See **Exhibit 3**, attached hereto. Petitioner has also contemporaneously filed in the Circuit Court for Queen Anne's County, Maryland a Motion to Correct Illegal Sentence, Queen Anne's County Circuit Court Case #4789), and a Motion to obtain the transcript of the grand jury testimony of Cpl. Benton of the

Maryland State Police (Queen Anne's County Case No. 4789, and Wicomico County Case # 97-CR-1143).  See **Exhibits 4 and 5**, attached hereto.  Petitioner therefore submits a "mixed" Petition for Relief containing exhausted and unexhausted claims for relief pursuant to  Rhines v. Weber, 544 U.S. 269 (2005).

## II.    COMPELLING REASONS MANDATE A STAY AND ABEYANCE OF THIS PROCEEDING PURSUANT TO RHINES V. WEBER

Rhines v. Weber, 544 U.S. 269 (2005),  was issued by the Supreme Court two years ago in an effort to resolve problems arising from (1) the requirement that a petitioner exhaust all federal claims in state court first before pursuing them in federal court, (2) the one year limitations period applicable to 2254 actions pursuant to the mid-1990's AEDPA amendments to federal law, and (3) at the same time accommodating the requirements of Rose v. Lundy, 455 U.S. 509 (1982), which requires that mixed petitions containing exhausted and unexhausted claims be dismissed while the unexhausted claims are exhausted in state court. In Rhines, The Supreme Court resolved this conflict by allowing district courts to hold 2254 petitions containing mixed claims while the unexhausted claims are exhausted in state court.

Rhines established three conditions for the stay and abeyance procedure to apply in a particular case, and required the district courts to consider and make findings regarding each condition to implement the stay procedure. There must be good cause

16

for the failure to exhaust the unexhausted claims; the unexhausted claims must be potentially meritorious; and, there must be no evidence that the process involves intentionally dilatory litigation tactics.

By way of introduction, there are five unexhausted claims which counsel wishes to litigate during the requested stay. Details regarding those claims are set forth in the attached motion to reopen post conviction proceedings, the attached motion to obtain grand jury minutes, and the attached motion to correct illegal sentence. See **Exhibits 3, 4 and 5**. Summaries of those issues are set forth below. As previously noted, two of the claims arise from events that occurred after the circuit court heard evidence and denied relief, and after the application for leave to appeal had already been filed.

As to those claims which arise from events which occurred after relief had been denied in the circuit court, the first concerns the constitutionality of the weighing process in which the jury in Petitioner's trial, and in other death penalty cases in Maryland, balances aggravating factors and mitigating factors. Effective upon filing a motion to correct illegal sentence on Friday, August 10, Petitioner will be contending that, pursuant to a decision of the Supreme Court, Cunningham v. California, 127 S. Ct. 856 (2007), entered on January 22, 2007, Maryland's death penalty sentencing scheme, which allows imposition of a sentence of death upon a determination that the aggravating factors outweigh the mitigating factors by a preponderance of the evidence,

violates the Sixth Amendment. Petitioner will contend that, in this case, his Sixth Amendment rights were specifically violated by the weighing process.

In <u>Cunningham</u>, the United States Supreme Court struck down, under the Sixth Amendment, a state sentencing rule for non-capital cases that allowed a defendant to receive the maximum specified sentence if the court found by a preponderance of the evidence – rather than beyond a reasonable doubt – that the aggravating factors involved outweighed the mitigating factors. As with the sentencing provision at issue in <u>Cunningham</u>, the Maryland death penalty statute similarly allows a defendant to receive the harshest specified penalty – death – if the aggravating factors that exist are held to outweigh the mitigating factors by a preponderance of the evidence. Md. Crim. L. §§ 2-303(i)(1) and (i)(2)(i). <u>Cunningham</u> makes it abundantly clear that §§ 2-303(i)(1) and (i)(2)(i) facially violate both the Sixth Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment, as well as Article 21 of the Maryland Declaration of Rights. Because Maryland's sole statutory framework for conducting the penalty phase of a death-penalty case is unconstitutional, the death sentence in this case must be struck.

Absent the <u>Cunningham</u> decision, claims arising from that decision could not have been brought to the attention of a circuit court in 2006, thus the <u>Cunningham</u> claim has not been exhausted in state court.

The second of the two claims which could not have been feasibly raised in 2006 before the circuit court arises from the trial perjury of the State's firearms examiner, Joseph Kopera. Only in March 2007, a few months after the January, 2007 <u>Cunningham</u> decision, did Mr. Kopera's trial perjury become known. In March, the Maryland OPD conclusively determined that the State's forensic firearms expert, Joseph Kopera, had been regularly perjuring himself by giving false testimony about his qualifications. When the OPD became aware of this situation in March, 2007, and confronted Mr. Kopera about it, he faxed the office a forged University of Maryland transcript.

Mr. Kopera testified in Petitioner's trial and perjured himself when he stated that he had degrees from the University of Maryland and Rochester Institute of Technology. Mr. Kopera went on to testify that the gun found in the river could have been the weapon used to kill Atkinson – thereby bolstering the crucial testimony provided by Petitioner's wife about the murder weapon. It is one of the contentions of the defense that when the State suborns perjured testimony from a witness in a death penalty case, regardless of whether the specific prosecutor was aware of it, a Due Process violation occurs and a new trial is merited.  The Kopera issue is one that could not have been feasibly raised in the circuit court proceedings in the spring of 2006, thus there was good cause, as with the <u>Cunningham</u> claim, for that issue to remain unexhausted at the present time.

As for the three claims which might have been raised earlier, in the circuit court proceedings, they are addressed separately as follows:

First, prior post-conviction counsel neglected to locate and interview an individual named Mary Snively who was with Petitioner during the crime and who could probably offer a comprehensive explanation of what happened. Some efforts by defense counsel were made to locate Snively prior to trial, and efforts were made by prior post conviction counsel, however she was not located. Undersigned counsel has reason to believe that the defense will be able to contact this witness if given a reasonable amount of time.

Second, prior counsel neglected to obtain a comprehensive mental health examination of Petitioner. No psychiatrist reporting to an attorney representing Petitioner in this case ever saw Mr. Miles until last week, July 30 to August 3, 2007. The earlier examination by a psychologist reporting to Mr. Saunders did not result in the preparation of a report and no details regarding that examination have been provided to undersigned counsel by the psychologist, despite repeated efforts in the past few weeks. Mr. Kanwisher obtained a neurologist's services; however, no comprehensive examination was initiated. While thorough psychological evaluations have become standard in death penalty defenses nationwide, this step has been neglected in the instant case. Dr. Blumberg has already determined that Mr. Miles suffers from a severe category of Post-Traumatic Stress Disorder that came about due to years of extensive

20

sexual and physical abuse while Petitioner was an adolescent. Dr. Blumberg is currently investigating how this disorder may be related to the conduct for which Petitioner is charged, but he needs more time to reach a firm result.

The third and final issue which could have developed previously but was not arises from the interplay between the grand jury's May 7, 1997 indictment in this case and the suppression of the citizen's wire tap used by police against Petitioner that the Court of Appeals found to be illegal. Miles v. State, 365 Md. 488 (2001). Based on the date when the wire tap evidence was obtained by police, on or about April 22, 1997, and May 7, 1997, when the Grand Jury convened and issued a charging document against Petitioner, and based on the known identification of the State's lead investigator, Cpl. Benton, as the State's grand jury witness, the defense has reason to believe that illegal evidence may have been placed before the Grand Jury. In order to resolve this potential issue, undersigned counsel has petitioned both the Wicomico County Circuit Court, which supervised the grand jury, and the Queen Anne's County Circuit Court which received the case from Wicomico County, to obtain a transcript of the Grand Jury proceedings. More time is necessary to follow up on this developing issue.

Thus, in terms of the three findings required by this Court to authorize a stay, there is good cause for the failure to exhaust claims previously. Good cause arises from the impossibility of raising the Cunningham and Kopera issues in 2006, and from the neglect of prior counsel in overlooking locating and interviewing Ms. Snively, failing to

conduct the comprehensive mental health examination, and failing to obtain the grand jury minutes. The merits of those claims are set forth above and in the attached motion to correct illegal sentence, motion to reopen post conviction proceedings, and motion to obtain grand jury minutes.

## CONCLUSION

Petitioner has had three lead lawyers in the last twenty four months. One lawyer had to withdraw due to health reasons, while the second lawyer died in an automobile accident. Undersigned lead counsel has been representing Petitioner for less than one month in a case which has been pending for ten years. In the period of time available to new lead counsel, a number of promising issues have been identified which must be developed and fully litigated in the state courts. The stay and abeyance procedure requested is not intended to delay proceedings, but rather to allow them to advance in an orderly fashion so that the state courts can hear all claims first before this Court takes action.

This memorandum of law does not address the merits of Petitioner's exhausted claims. Although the Rhines procedure does not specifically require the Court to consider the merits of the exhausted claims in deciding whether to grant a stay, this Court is not precluded from doing so at this time. Counsel is prepared to brief the merits of the exhausted claims if the Court believes it should reach those issues at this time.  On the other hand, counsel contends that an orderly process in this case would

involve the state courts resolving all possible claims first, and then this Court receiving briefing on all claims at one time. Hearing and deciding the claims in this case in bits and pieces would not, counsel submits, be an economical use of the Court's time. Thus, we ask the Court to order briefing on the merits of the claims only when all claims are exhausted. Should the Maryland courts ultimately order relief on one or more claims which have not been exhausted, this Court's involvement in this case may be considerably curtailed.

For all of the foregoing reasons, Petitioner, Jody Lee Miles, respectfully requests that this Court grant relief upon exhaustion of all claims in state court.

Respectfully submitted,

Robert W. Biddle
Nathans & Biddle L.L.P.
120 East Baltimore Street, #1800
Baltimore, MD 21202
410-783-0272

Erika Alsid Short
Ranak K. Jasani
Whiteford, Taylor & Preston L.L.P.
210 West Pennsylvania Avenue
Towson, Maryland  21204
(410) 832-2000

*Attorneys for Petitioner*, Jody Lee Miles

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of August, 2007, a copy of the foregoing Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. §2254, Motion and Memorandum of Law Seeking Stay and Abeyance, Civil Cover Sheet and Exhibits were sent via first class mail to:

Kathryn Grill Graeff, Esquire
James Williams, Esquire
Office of the Attorney General, Criminal Appeals
200 St. Paul Place
Baltimore, Maryland 21202


_____
Erika Alsid Short

388034

24