| | |
|---|---|
| **STATE OF MARYLAND,** | *     IN THE |
| | *     **CIRCUIT COURT** |
| **v.** | *     **FOR QUEEN ANNE'S** |
| **JODY LEE MILES,** | *     **COUNTY** |
|        **Defendant.** | *     **Case #4789** |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MOTION INCLUDING MEMORANDUM OF LAW TO CORRECT
## ILLEGAL SENTENCE PURSUANT TO MARYLAND RULE 4-345(A)

Defendant, also referred to as "Petitioner" below, Jody Lee Miles, inmate # 272-901, MCAC, 401 East Madison Street, Baltimore, MD 21202, by undersigned counsel, hereby moves to correct an illegal sentence pursuant to Md. Rule 4-345(a). The death sentence in this case should be vacated because pursuant to *Cunningham v. California*, 127 S. Ct. 856 (2007), a decision filed on January 22, 2007, Maryland's death penalty sentencing scheme violates the Sixth Amendment. The sentencing scheme allows imposition of a sentence of death upon a determination that the aggravating factors outweigh the mitigating factors by a preponderance of the evidence. To comply with the Sixth Amendment pursuant to *Cunningham*, the statute must provide that the aggravating factors outweigh the mitigating factors beyond a reasonable doubt. In this case, where the jury found only one aggravating factor and several mitigating factors, Mr. Miles' Sixth Amendment rights were specifically violated by the faulty burden of proof.

1

*Cunningham* struck down under the Sixth Amendment a state sentencing rule for non-capital cases that allowed a defendant to receive the maximum specified sentence if the court found by a preponderance of the evidence – rather than beyond a reasonable doubt – that the aggravating factors involved outweighed the mitigating factors. As with the sentencing provision at issue in *Cunningham*, the Maryland death penalty statute similarly allows a defendant to receive the harshest specified penalty – death – if the aggravating factors that exist are held to outweigh the mitigating factors by the preponderance of the evidence. Md. Crim. L. §§ 2-303(i)(1) and (i)(2)(i). *Cunningham* makes it abundantly clear that §§ 2-303(i)(1) and (i)(2)(i) facially violate both the Sixth Amendment to the United States Constitution as incorporated against Maryland through the Fourteenth Amendment, as well as Article 21 of the Maryland Declaration of Rights. Because Maryland's sole statutory framework for conducting the penalty phase of a death-penalty case is unconstitutional, the death sentence in this case must be struck.

The jurisdictional basis for this Court to address this issue on a motion to correct illegal sentence is amply supported in *Evans v. State*, 396 Md. 256 (2006), which describes those circumstances where a motion to correct an illegal sentence may be used in a capital case to attack some facet of the sentencing process which violates the U.S. Constitution based on rulings of the Supreme Court subsequent to the sentencing hearing and imposition of a sentence of death.

2

## PROCEDURAL HISTORY

On April 4, 1997, Edward Joseph Atkinson's body was found in a wooded area on Old Bradley Road in Wicomico County. During the subsequent investigation, the police learned that Mr. Atkinson's credit cards had been used at several locations after his reported disappearance. A composite sketch of a white male suspect, approximately 6'1" to 6'3" tall, having medium length dirty blonde to brown hair and wearing white jeans with a white shirt and cowboy boots was developed and circulated on the local news stations. On April 15, 1997, a Caroline County resident recorded a cellular telephone conversation that he intercepted on a scanner. The taped conversation was between an unidentified man and an unidentified woman and was turned over to police. After listening to the taped conversation, the police determined that the male caller was Petitioner and that the female caller was his wife, Jona Miles. Using the information from the tape of the intercepted cellular conversation, the police obtained a search and seizure warrant for the mobile home residence of Jona Miles. When questioned, Mrs. Miles agreed to show the police where she had disposed of a handgun and also provided the police with a description of Mr. Miles and the car he would be driving. Police later found a handgun in the area of where Mrs. Miles said it would be. Later that evening, police arrested Petitioner and he was taken to the police station and interrogated. Petitioner was indicted and charged on May 9, 1997, of felonious homicide, robbery, robbery with a deadly weapon, first-degree assault and use of a handgun in a crime of violence in connection with the April 2, 1997 death of Mr. Edward Atkinson in Mardela Springs, Wicomico County.

3

Based on a Suggestion of Removal due to extensive pre-trial publicity, the case was removed from the Circuit Court for Wicomico County to this Court on October 2, 1997, after the State filed a Notice of Intention to Seek the Death Penalty on July 29, 1997. A number of pre-trial motions were filed by counsel on behalf of Petitioner. Defense counsel filed a Motion to Suppress the wiretap information which was granted in part and denied in part. Motions to suppress Petitioner's custodial statement taken in violation of Petitioner's *Miranda* rights, to suppress evidence stemming from the search of Petitioner's vehicle, and evidence related to the seizure of the handgun were denied.

On March 9, 1998, a jury was selected. The State of Maryland's theory was that Petitioner either killed Mr. Atkinson during the course of a robbery, or that he had committed a willful, deliberate and premeditated murder. Petitioner's defense counsel conceded that Mr. Atkinson was killed by Petitioner, but contended that Petitioner's actions amounted to no more than second degree murder. Trial lasted from March 9, 1998 until March 12, 1998. The State called twenty-three witnesses in its case-in-chief, including Mr. Kopera (the MSP firearms examiner), Mr. Atkinson's mother, his brother (who assisted with the investigation in the case and was the first to locate the victim's body), sales associates who waited on Mr. Atkinson while he was shopping the day that he was killed, Maryland State Police crime scene technicians and police officers involved in the investigation, employees of a gas station where Mr. Atkinson's credit card was used after his death, among others. Notably, the State called Jona Miles, Petitioner's wife, who waived her marital privilege. Petitioner's defense counsel called two witnesses, the lead investigator in the case who identified the rest area where Petitioner allegedly encountered Mr. Atkinson as a known meeting place for bisexual

4

and homosexual men, and recalled a witness originally called by the State who was a friend of Mr. Atkinson and testified that he frequently borrowed money from others.

In closing argument, the State argued that premeditation was demonstrated by the manner in which Mr. Atkinson was killed, and that Petitioner was guilty of felony murder by the mere fact that Mr. Atkinson was robbed as part of the incident. Petitioner's defense counsel argued that Petitioner did not intend to rob Mr. Atkinson and that the crime was not premeditated. Defense counsel argued that Petitioner was scared and killed Mr. Atkinson and that the crime amounted to second degree murder only. During deliberation the jury requested clarification of the definitions of felony murder, premeditated murder and property. The Court reinstructed the jurors as to all crimes alleged. The jury subsequently acquitted Petitioner of first-degree premeditated murder, but convicted him of felony murder, robbery with a deadly weapon, robbery and use of a handgun in the commission of a crime of violence.

The sentencing hearing occurred over the course of two days from March 17-18, 2005. The State presented the testimony of Dorothy Atkinson, the victim's mother. Petitioner's defense counsel presented the testimony of Donald Steil (a private investigator who interviewed several corrections officers and several other witnesses regarding Petitioner's personal history), Lisa Hopkins (Petitioner's older sister who briefly testified about their impoverished childhood and provided general statements regarding physical and emotional abuse by their mother), Carrie Cooper (the mother of Petitioner's daughter who testified that she had never seen Petitioner lose his temper and that she knew him to consume large amounts of alcohol), and Ann Stanfield Hagert, a social worker who conducted a purported psycho-social assessment of

5

Petitioner and concluded that he was raised in a chaotic, abusive and impoverished family.

Petitioner provided an allocution. After weighing the sole aggravating factor of felony murder versus the mitigating factors presented by Petitioner's defense counsel using a preponderance of the evidence standard as instructed by the trial court, the jury sentenced Petitioner to death.

A timely appeal was noted to the Court of Appeals. Petitioner's counsel sought reversal on the following grounds: (1) that the trial court committed error in denying, in part, Petitioner's motion to suppress pursuant to Maryland's Wiretapping Act, (2) that the trial court erred in failing to fully disclose the contents of a jury note sent to the judge after seven hours of sentencing deliberations, (3) that it was improper for the court to instruct the jury that unanimity is an absolute prerequisite and fail to instruct the jury that it could report its lack of unanimity when, after seven hours of deliberation, the jury asked the trial court what to do if they were not unanimous, (4) that the trial court improperly limited what the jury could consider as mitigating evidence under section 8(b) of the sentencing form in instructions provided to the jury, (5) that the trial court erred in refusing to instruct the jury during sentencing that it must find, as a non-statutory mitigating circumstance, that Petitioner was acquitted of premeditated murder, (6) that there were ambiguities and inconsistencies present in the sentencing verdicts which required that the death sentence be vacated, (7) that the trial court erred in excusing four jurors for cause, and (8) that the trial court abused its discretion in refusing to grant defense counsel's motion for mistrial when it was discovered that the jurors had seen Petitioner in shackles.

6

After briefing and oral arguments, the Court of Appeals affirmed Petitioner's convictions and sentence in a decision of four to three. *See Miles v. State*, 365 Md. 488, 781 A.2d 787 (Md. 2001). With regard to the wiretap issue, while the Court of Appeals determined that the recording of the telephone call itself and all evidence seized by the police pursuant to the execution of a search warrant for Jona Miles' property was properly suppressed, it determined that the trial court properly admitted the murder weapon and its accessories at trial because Mrs. Miles' voluntary actions in leading the police to them purged the taint from the original unlawful disclosure of the taped cellular phone conversation. A Petition for Writ of Certiorari was filed and subsequently denied by the United States Supreme Court on February 25, 2002. *See Miles v. Maryland*, 122 S.Ct. 1175 (2002).

Post conviction proceedings followed, which have been heard by Judge Price sitting in Chestertown. The post-conviction hearing was held on June 22-23, 2006. The court denied the Petition by Memorandum Opinion and Order filed on August 21, 2006. On October 25, 2006, counsel for Petitioner filed an Application for Leave to Appeal from the Denial of Post-Conviction Relief.

As noted above, *Cunningham v. California* was issued on January 22, 2007.

The Court of Appeals denied Petitioner's Application for Leave to Appeal in a one-page Order dated March 13, 2007. Petitioner filed a Petition for Writ of Certiorari with the United States Supreme Court on June 11, 2007. That Petition is still pending.

By way of information, contemporaneously with this filing, a Motion to Reopen and Memorandum of Law in Support has been filed on behalf of Petitioner in this Court (Case No. CR4789PC). Petitioner has also filed a Motion to obtain the transcript of the

7

grand jury testimony of Cpl. Benton of the Maryland State Police (Queen Anne's County Case No. 4789, and Wicomico County Case # 97-CR-1143), and filed for relief pursuant to 28 U.S.C. §2254 in the U.S. District Court for the District of Maryland. The claim arising from the *Cunningham* decision is not being brought in any other state court, and has been brought to the attention of the federal court only to advise that court that the *Cunningham* issue is presented to this Court for a ruling in the first instance as required by federal law.

**ARGUMENT**

**A.    STATUTORY FRAMEWORK.**

Maryland law states that the sentence for first degree murder may be life imprisonment, life imprisonment without the possibility of parole, or death.  Md. Crim. L. § 2-201(b)(1).  A defendant convicted of a capital offense may not be sentenced to death, however, unless:

(1)    the jury finds that one or more aggravating factors exist, *see* Md. Crim. L. § 2-303(g)(1), *and*

(2)    the jury finds that the aggravating factors outweigh whatever mitigating factors exist.  *See* Md. Crim. L. §§ 2-303(i)(1), (i)(2)(i).

Both of these findings are equally necessary for a defendant to be sentenced to death.  Section 2-303(g)(2) states, "If the court or jury does not find that one or more of the aggravating circumstances exist . . . a death sentence may not be imposed."  Similarly, § 2-303(i)(2)(ii) states, "If the court or jury finds that the aggravating circumstances . . . do not outweigh the mitigating circumstances, a death sentence may not be imposed."  There is no basis in the text of the statute for distinguishing between

8

the effects of these two potential findings.

The State's burdens of proof for these two findings, however, are dramatically different. In considering the first prong—whether any aggravating factors exist—a jury must make that finding "beyond a reasonable doubt." Md. Crim. L. §§ 2-303(g)(1), (2). In considering the second factor—whether the aggravating factors outweigh the mitigating factors—the jury is directed to make that finding only "by a preponderance of the evidence." *Id.* § 2-303(i)(1). If the jury decides beyond a reasonable doubt that one or more aggravating factors exist, and concludes by a preponderance of the evidence that these aggravating factors outweigh any mitigating factors that are present, "a death sentence shall be imposed." *Id.* § 2-303(i)(2)(i).

**B.     THE SUPREME COURT'S RULING IN *CUNNINGHAM V. CALIFORNIA***

*Cunningham v. California*, 127 S. Ct. 856 (2007), clarified the Supreme Court's earlier rulings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 (2002), and, in the process, invalidated a sentencing procedure that contained a provision identical in relevant part to Md. Crim. L. §§ 2-303(i)(1) and (i)(2)(i). In *Apprendi*, the Court had held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. *Ring* went on to hold that *Apprendi* applied in the death-penalty context, concluding that any fact that allows a court to sentence a defendant to death also "must be found by a jury beyond a reasonable doubt." *Ring*, 536 U.S. at 589.

9

*Cunningham* settles what *Apprendi* and *Ring* left open.  Under those two cases, it was unclear whether the Sixth Amendment required juries to employ the "reasonable doubt" standard when determining whether the aggravating factors outweighed the mitigating factors in the penalty phase of a capital case.  The Court of Appeals has repeatedly answered that question in the negative.  *Cunningham*, however, establishes that the jury must make this determination "beyond a reasonable doubt," just as they must with all other determinations in a capital case that subject a defendant to death.

The structure of the California statutory scheme in *Cunningham* was functionally equivalent to Maryland's capital sentencing procedure.  The defendant in *Cunningham* was convicted of continuous sexual abuse of a minor.  *Cunningham*, 127 S. Ct. at 860. California law stated that the sentence for this offense may be six years imprisonment (the "lower term"), twelve years imprisonment (the "middle term"), or sixteen years imprisonment (the "upper term").  Cal. Pen. Code §288.5(a); *Cunningham*, 127 S. Ct. at 860.  A defendant could not receive the upper term of sixteen years, however, unless:

(1)     the judge found that one or more aggravating factors existed, *and*

(2)     the judge found that the aggravating factors outweighed whatever mitigating factors existed.  *See* Cal. R. Ct. 4.420(b) (2006), *attached as* Ex. 2; *see also* Cal. Pen. Code § 1170(b) (2006) (holding that the middle term sentence must be imposed "unless there are circumstances in aggravation or mitigation of the crime"), *attached as* Ex. 3.

Both of these findings were equally necessary for a defendant to be sentenced to death.  Under California law, however, a judge rather than a jury was permitted to make these findings, and he could do so by "a preponderance of the evidence," rather than beyond a reasonable doubt.  Cal. R. Ct. 4.420(b) (2006), *attached as* Ex. 2.

10

The trial judge in *Cunningham* found *by a preponderance of the evidence* that six aggravating and one mitigating factor existed, and that "*the aggravators outweighed the sole mitigator.*" *Cunningham*, 127 S. Ct. at 860–61 (emphasis added). Based on this ruling, he sentenced the defendant to an "upper term" of sixteen years. *Id.* at 861.

The Supreme Court reversed. It began by restating the fundamental principle that "any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, *not merely by a preponderance of the evidence.*" *Id.* at 863–64 (emphasis added). It went on to identify the proper starting point for an *Apprendi* analysis:

> [T]he "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant . . . . In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.

*Cunningham*, 127 S. Ct. at 865 (emphasis omitted), *quoting Blakely v. Washington*, 542 U.S. 296, 303 (2004).

Thus, *Cunningham* first clarified that the relevant "statutory maximum" for an *Apprendi* analysis is the maximum sentence that could be imposed based solely on the jury's findings beyond a reasonable doubt. Applying this standard, the relevant statutory maximum in *Cunningham* was twelve years—the "middle term" sentence that could be imposed in the absence of any additional findings. The defendant's sentence of sixteen years was therefore unconstitutional because it relied on two additional findings that were made by a judge, rather than a jury, and by a preponderance of the evidence, rather than beyond a

11

reasonable doubt.  The Court emphasized that "[f]actfinding to elevate a sentence from 12 to 16 years . . . falls within the province of the jury employing a beyond-a-reasonable-doubt standard, not the bailiwick of a judge determining where the preponderance of the evidence lies." *Id* at 870; *see also id.* ("Because the [California sentencing scheme] allocates to judges sole authority to find facts permitting the imposition of an upper term sentence, the system violates the Sixth Amendment.").

### C.      UNDER *CUNNINGHAM*, THE DEATH SENTENCE IN THIS CASE MUST BE STRICKEN.

Cunningham* expressly reaffirmed that the *Apprendi* principles apply to "facts subjecting a defendant to the death penalty."  127 S. Ct. at 864.  It emphasized that the "reasonable doubt" requirement extends to determinations involving "broad discretion . . . to determine whether an enhanced sentence is warranted in any particular case." *Id.* at 869.  The Court expressly cautioned against attempting to decide whether certain determinations were exempt from *Apprendi*'s requirements because that "is the *very* inquiry *Apprendi*'s 'bright-line rule' was designed to exclude." *Id.* at 869 (emphasis in original and citation omitted).

The Court's reasoning and its ultimate decision to invalidate Cal. R. Ct. 4.420(b) (2006) on its face inexorably leads to the conclusion that Md. Crim. L. §§ 2-303(i)(1) and (i)(2)(i) are facially unconstitutional.  A defendant convicted of first-degree murder under Maryland law, like a defendant convicted of continuous sexual abuse under California law, is subject to three possible penalties.  The

harshest penalty for first-degree murder under Maryland law is death, while the harshest penalty for continuous sexual abuse under California law is sixteen years imprisonment.

Under Maryland law, like California law, a defendant cannot receive the most severe sentence unless the fact-finder concludes *both* that at least one aggravating factor exists *and* that the aggravating factors outweigh any mitigating factors.  If the jury finds that one or more aggravating factors exist, that finding is *not sufficient* to permit the defendant to be sentenced to death. Maryland law expressly states, "If the court or jury finds that the aggravating circumstances . . . do not outweigh the mitigating circumstances, a death sentence may not be imposed." § 2-303(i)(2)(ii).  Thus, even if aggravating factors exist, a defendant may not be sentenced to death unless and until the jury makes "additional findings" concerning the balance of aggravating and mitigating factors. *Cunningham*, 127 S. Ct. at 865.  *Cunningham* clarifies that the protections of *Apprendi* apply to that additional finding.

The *Cunningham* Court invalidated California's sentencing scheme because it directed a judge rather than the jury to determine whether the balance of aggravating and mitigating factors warranted the harshest possible sentence, and permitted this determination to be made by a preponderance of the evidence rather than beyond a reasonable doubt.  *Id.*  Maryland's capital sentencing system properly entrusts this determination to the jury, but permits it to balance aggravating factors against any mitigating factors by only a preponderance of the

13

evidence. *Cunningham* requires that the jury reach this conclusion beyond a reasonable doubt.

Because Maryland's death penalty procedure is facially unconstitutional, the death sentence in this case must be struck.

### D.    PRIOR MARYLAND PRECEDENTS ON THIS ISSUE HAVE BEEN OVERRULED.

Since the Supreme Court's ruling in *Apprendi*, the Maryland Court of Appeals has considered on three occasions the issue of whether the State must establish beyond a reasonable doubt that aggravating factors outweigh the mitigating factors in a capital sentencing proceeding.[1]  A close analysis of these three opinions demonstrates that they have been overturned by *Cunningham* or its predecessors.

aa.    *Borchardt v. State* - *Borchardt v. State*, 367 Md. 91, 786 A.2d 631 (2001), was handed down soon after *Apprendi*, but before *Ring*.  The Court rejected the defendant's argument that the jury had to conclude beyond a reasonable doubt that aggravating factors outweighed any mitigating factors.

*First*, the Court of Appeals in *Borchardt* relied on the Supreme Court's statement in *Apprendi* "that its decision did not render invalid State capital sentencing schemes." *Id.* at 121, 786 A.2d at 649; *see also id.* at 125, 786 A.2d at 651 (reiterating "the clearly stated view of the *Apprendi* majority that their

---

[1] The Court reiterated its conclusions in several other cases without any independent reasoning or analysis. *See, e.g., Evans v. State*, 389 Md. 456, 483, 886 A.2d 562, 577 (2005); *Baker v. State*, 383 Md. 550, 554, 861 A.2d 48, 50 (2004); *Miller v. State*, 380 Md. 1, 20, 843 A.2d 803, 815 (2004).

14

decision did not affect death penalty statutes"). The Court of Appeals argued that if *Apprendi* permitted a judge to conduct the entire penalty-determination process himself without using a particular evidentiary standard, then by extension *Apprendi* could not require that a jury employ a "beyond a reasonable doubt" standard in making those determinations. *Id.* at 121–22, 786 A.2d at 649. This argument, of course, was expressly rejected in *Ring*, 536 U.S. at 609, in which the Court held, "The right to trial by jury guaranteed by the Sixth Amendment would be senselessly diminished if it encompassed the factfinding necessary to increase a defendant's sentence by two years, but not the fact-finding necessary to put him to death. We hold that the Sixth Amendment applies to both."

*Second,* the Court of Appeals held that *Apprendi* was inapplicable because none of the jury's findings during the penalty stage of a trial served to enhance the maximum sentence to which a defendant was subject. The Court explained that a defendant convicted of first-degree murder already was subject to a range of penalties in which "death is the high end" and "life imprisonment [is] the low end." *Borchardt*, 367 Md. at 123, 786 A.2d at 650. The Court explained, "Neither the existence of an aggravating circumstance . . . nor the jury's determination that the aggravating circumstance(s) it has found to exist outweighs any mitigating circumstances, serves to increase in any way 'the prescribed statutory maximum' or, indeed, the statutory range." *Id.*; *see also id.* at 125, 786 A.2d at 651 ("Unlike the situation in *Apprendi*, the death sentence is

15

not in excess of the maximum statutory penalty for the offense.").

Again, *Ring* squarely rejected this reasoning. Under the Arizona statute at issue in that case, a defendant convicted of first-degree murder could be sentenced to life imprisonment or death. *Ring*, 536 U.S. at 604. The Court emphasized, however, that "the relevant inquiry is one not of form, but of effect." *Id.* It held that "[t]he Arizona first-degree murder statute authorize[d] a maximum penalty of death only in a formal sense," because a defendant could not be sentenced to death based solely on a conviction of first-degree murder without additional factual findings being made. *Id.* at 604–05. Thus, the Sixth Amendment required that those findings be made by a jury. *Id.*; *see also id.* at 605 (reaffirming that the "characterization of a fact or circumstance as an 'element' or a 'sentencing factor' is not determinative of the question 'who decides,' judge or jury").

*Finally*, the Court of Appeals held that *Apprendi* did not apply to balancing aggravating factors against mitigating factors because the jury's "finding" on that issue was not a finding of fact, but rather a traditional "sentencing factor." *Borchardt*, 367 Md. at 126–27, 786 A.2d at 652. It explained that aggravating and mitigating circumstances

> are entirely independent from one another—the existence of one in no way confirms or detracts from another. The weighing process is purely a judgmental one, of balancing the mitigator(s) against the aggravator(s) to determine whether death is the appropriate punishment in the particular case. This is a process that not only traditionally, but quintessentially, is a pure and Constitutionally legitimate sentencing factor, one that does not require a determination to be made beyond a reasonable doubt.

16

*Id.* (emphasis added).

*Apprendi* itself held that a state may not avoid the requirements of the Sixth Amendment simply by designating something as a "Constitutionally legitimate sentencing factor." The *Apprendi* Court declared, "[L]abels do not afford an acceptable answer. . . . [T]he relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi*, 530 U.S. at 494.

*Cunningham* conclusively eliminates whatever viability remained in *Borchardt*'s final argument. *Cunningham* invalidated, in its entirety, a sentencing scheme that subjected a defendant to a heightened sentence if a judge held—under a "preponderance of the evidence" standard, rather than "beyond a reasonable doubt"—that "the circumstances in aggravation outweigh the circumstances in mitigation." Cal. R. Ct. 4.420(b) (2006), *attached as* Ex. 2. This is virtually identical to Md. Crim. L. § 2-303(i)(1), which directs a capital sentencing jury to "determine by a preponderance of the evidence whether the aggravating circumstances . . . outweigh the mitigating circumstances." It is no longer possible to argue that *Apprendi* and *Ring* do not apply to this determination because it is not a "fact." As noted earlier, the *Cunningham* Court emphasized that *Apprendi* was a "'bright-line rule' [that] was designed to exclude" a case-by-case assessment of whether certain findings (such as the one at issue here) could be made by a judge, or under a preponderance of the evidence standard. 127 S. Ct. at 869. It recognized that *Apprendi* governed decisions such as this involving "broad discretion . . . to determine whether an

17

enhanced sentence is warranted in any particular case." *Id.*

A person should not be sentenced to death "upon no higher degree of proof than applies in a negligence case." *Woodby v. INS*, 385 U.S. 276, 285–86 (1966). As Justice Scalia had earlier suggested in his concurring opinion in *Ring*, "the fundamental meaning of the jury-trial guarantee of the Sixth Amendment is that all facts essential to imposition of the level of punishment that the defendant receives—whether the statute calls them elements of the offense, sentencing factors, or Mary Jane—must be found by the jury beyond a reasonable doubt." 536 U.S. at 610 (Scalia, J., concurring).

Indeed, the clear and explicit text of these provisions requires the jury to make a factual finding: "***If the court or jury finds*** that the aggravating circumstances outweigh the mitigating circumstances, a death sentence shall be imposed." Md. Crim. L. § 2-303(i)(2)(i) (emphasis added). This is ***exactly*** the same language the death penalty statute uses in discussing the jury's determination of whether aggravating factors exist: "If ***the court or jury finds*** beyond a reasonable doubt that one or more of the aggravating circumstances...exist, it then shall consider whether any of the following mitigating circumstances exists based on a preponderance of the evidence." Md. Crim. L. § 2-303(h)(2) (emphasis added). No one contests that § 2-303(h)(2) requires the jury to make a factual finding as to the existence of aggravating factors. Because §§ 2-303(i)(1) and (i)(2)(i) use the same statutory language found in § 2-303(h) in directing the jury to weigh aggravating and mitigating factors, the outcome of that balancing must be regarded as a factual

18

finding, as well.

Furthermore, the fact that §§ 2-303(i)(1) and (i)(2)(i) call for a jury to make a subjective assessment and weigh competing considerations to reach a "judgmental" conclusion does not preclude that conclusion from being a factual finding.  For example, juries are also called upon to balance competing factors and reach a factual conclusion when evaluating a criminal defendant's necessity or justification defense.  They must consider whether the mitigating factors concerning the situation (the "greater evil" the defendant sought to avert) outweigh the aggravating favors (the "lesser evil" the defendant committed).  *See Sigma Repro. Health Ctr. v. State*, 297 Md. 660, 675–80, 467 A.2d 483, 490–94 (1983); *Marquardt v. State*, 164 Md. App. 95, 132–37, 882 A.2d 900, 921–24 (2005).

The "reasonableness" of a criminal defendant's conduct also is a quintessential question of fact that a jury must find beyond a reasonable doubt, although it requires the jury to weigh the risks created by the party's conduct (akin to aggravating factors) against the benefits or proffered justifications for that conduct (akin to mitigating factors).  *See, e.g., State v. Pagatto*, 361 Md. 528, 549, 762 A.2d 97, 108 (2000) (holding that a jury must assess "the reasonableness of the [defendant's] conduct" in a reckless endangerment case).  As with mitigators and aggravators, the factors that go into a "reasonableness" determination are "independent from one another," and "the existence of one in no way confirms or detracts from another." *Borchardt*, 367 Md. at 126–27, 786 A.2d at 652.  The Court of Appeals has expressly held that "[q]uestions of

19

reasonableness are ordinarily for the trier of fact because it accounts for the circumstances of the individual case . . . ." *Murphy v. 24th St. Cadillac Corp.,* 353 Md. 480, 495, 727 A.2d 915, 922 (1999).

Thus, *Cunningham* undercut the only surviving basis in *Borchardt* for holding that the jury's determination concerning the balance of aggravating and mitigating factors in a capital case may be made by a preponderance of the evidence rather than beyond a reasonable doubt. Maryland courts can no longer exempt §§ 2-303(i)(1) and (i)(2)(i) from the requirements of *Apprendi* and *Ring* by labeling the outcome of the balancing process as something other than a factual finding.

bb.    <u>*Oken v. State*</u> – *Oken v. State,* 378 Md. 179, 835 A.2d 1105 (2003), was handed down following *Ring.* In *Oken,* the Court of Appeals expressly recognized that its first two reasons for rejecting the defendant's argument in *Borchardt* had been overturned.  The Court nevertheless concluded that *Ring* did not require a jury to apply a "beyond a reasonable doubt" standard in weighing aggravating and mitigating circumstances because that determination did not increase the defendant's maximum statutorily authorized sentence.

The Court maintained that when a defendant is convicted of a capital offense, he becomes "death eligible" when a jury finds that one or more statutorily specified aggravating factors exist. *Id.* at 209, 835 A.2d at 1122.  Put another way, under the Court of Appeal's reasoning, the instant during a jury's deliberations that it determines that one or more aggravating factors exist

20

beyond a reasonable doubt, a capital defendant's maximum authorized sentence immediately jumps from life imprisonment to death. The *Oken* Court explained that when the jury goes on to weigh the aggravating factors against the mitigating factors, it is essentially determining where within the defendant's statutorily authorized range his sentence should fall—life or death. *Id.* at 210, 835 A.2d at 1123; *see also id.* at 213, 835 A.2d at 1125. This strained logic led the Court to conclude that *Apprendi* and *Ring* do not require that determination to be "beyond a reasonable doubt." *Id.* at 259–60, 835 A.2d at 1152.

As with *Borchardt*, *Cunningham* forecloses this argument, too. *Cunningham* explained that "the relevant 'statutory maximum'" in determining whether *Apprendi* applies to a case "is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." *Cunningham*, 127 S. Ct. at 865. As discussed earlier, the most recent incarnation of Maryland's death penalty statute expressly declares that "[i]f the court or jury finds that the aggravating circumstances . . . do not outweigh the mitigating circumstances, a death sentence may not be imposed." § 2-303(i)(2)(ii). Under this provision, a court cannot sentence a defendant to death unless the jury makes the "additional finding" that the aggravators outweigh the mitigators. *Cunningham*, 127 S. Ct. at 865. *Cunningham* thus makes it crystal clear that this additional finding must be made "beyond a reasonable doubt."

cc.   *Grandison v. State* – The Court of Appeals' final substantive analysis of this issue occurred in *Grandison v. State*, 390 Md. 412, 889 A.2d 366

(2005), which was handed down after the Supreme Court's rulings in *United States v. Booker*, 543 U.S. 220 (2005), and *Blakely v. Washington*, 542 U.S. 296 (2004), in which the Court extended *Apprendi* and *Ring* to federal and state sentencing guidelines systems.  The Court did not engage in an extended analysis of the issue, but simply reiterated its third argument from *Borchardt*, stating, "[T]he weighing process is not a fact-finding endeavor based on evidence, but is a determination requiring the sentencing authority, in this case the jury, to exercise its judgment in balancing the aggravating factors against the mitigating ones." *Grandison*, 390 Md. at 442, 889 A.2d at 384.  As explained above in the discussion of *Borchardt*, *Cunningham* now precludes this argument.

Thus, *Cunningham* has effectively overturned the Maryland Court of Appeals' rulings holding that the balance between aggravating and mitigating factors need be conducted only by a preponderance of the evidence.  Md. Crim. L. §§ 2-303(i)(1) and (i)(2)(i) are therefore unconstitutional.

## CONCLUSION

In conclusion, because Md. Crim. L. §§ 2-303(i)(1) and (i)(2)(i) facially violate the Sixth Amendment, this Court should find that sentence was imposed pursuant to an unconstitutional sentencing scheme. The death sentence in this case should be vacated.

Respectfully submitted,

Robert W. Biddle, Esq.

22

Nathans & Biddle, LLP
120 East Baltimore Street,
Suite 1800
Baltimore, MD 21202
410-783-0272

Erika Alsid Short, Esq.
Whiteford, Taylor &
Preston, LLP
210 West Pennsylvania
Ave.
Towson, MD 21204
410-832-2023

Attorneys for Petitioner
Jody Lee Miles

Dated: August 10, 2007

## REQUEST FOR HEARING

Mr. Miles requests an evidentiary hearing on all matters raised in this Motion.

Robert W. Biddle, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of August, 2007, a copy

of the foregoing Motion  was mailed by first class mail to the

following:

The Honorable Davis R. Ruark, Esquire
Sampson G. Vincent, Esquire
Office of the State's Attorney, Wicomico County
P.O. Box 1006
Salisbury, MD 21803

Kathryn Grill Graeff, Esquire
James Williams, Esquire
Office of the Attorney General, Criminal Appeals
200 St. Paul Place
Baltimore, MD 21202

Robert W. Biddle, Esq.