STATEMENT OF THOMAS J. SAUNDERS ESQ. REGARDING EVIDENCE OF SEXUAL ABUSE OF JODY MILES

Thomas J. Saunders Esq. states under penalty of perjury the following regarding evidence of sexual abuse of Jody Miles.

1. I was Jody Miles' attorney at trial and on direct appeal. Prior to trial, I attempted to gather evidence which could be presented to the jury in mitigation of the death penalty, should he be convicted of a death eligible offense.

2. I selected Dr. Sheri Bellow, a psychologist, to evaluate Mr. Miles and to gather information relevant to mitigation of the death penalty. I do not believe Dr. Bellow had previously been engaged to assist the defense in a capital case. I have been advised that records show that Dr. Bellow interviewed Mr. Miles on one occasion. I have no specific recollection of why Dr. Bellow did not interview Mr. Miles more than once.

3. The mitigation investigation of Mr. Miles conducted prior to trial gathered evidence that Mr. Miles was a chronic alcoholic, grew up in a chaotic and disorganized household, and suffered substantial physical non-sexual abuse by caretakers. The investigation prior to trial did not uncover evidence that Mr. Miles was sexually abused by a family friend while he was a young teenager.

4. Investigation prior to trial revealed that the victim Mr. Atkinson died in a roadside area commonly used for homosexual encounters by adult males. During the guilt/innocence phase of the trial, I presented testimony to the jury during the defense case by a police officer showing that the site of the shooting had that reputation in the community. Discovery provided by the State prior to trial showed that Mr. Atkinson was a homosexual. However, I did not have any mitigation evidence at trial to present linking any of Mr. Miles' pathologies (drinking, depression, post traumatic stress, etc.) to any sexual experiences he had prior to the shooting or to the nature of the location where the shooting took place.

5. According to an affidavit by Neil Blumberg, MD, a forensic psychiatrist whose expert opinions I respect, even if I do not always completely agree with them, nearly ten years after Mr. Atkinson's death he met with Mr. Miles on a number of occasions in the Fall of 2007 to evaluate Mr. Miles, and Mr. Miles told him that he had been sexually abused on many occasions while a young man by an older African-American male named Charlie Stevenson. In her one visit with Mr. Miles prior to trial, Dr. Bellow did not obtain this information about

1


DEFENDANT'S EXHIBIT 6

adolescent sexual abuse from Mr. Miles.

6. Had Dr. Bellow or any other expert obtained such information about Mr. Miles being sexually abused as an adolescent by an older male, I would certainly have presented such information to the jury in mitigation of the death penalty. Such evidence would have assisted in understanding Mr. Miles' numerous sexual liaisons as an adult, his depression, his drinking, and his post traumatic stress, as all of this behavior by Mr. Miles and his pathologies are entirely consistent with survivors of adolescent sexual abuse.

7. This later collected evidence of adolescent sexual abuse, if obtained prior to trial, would also have allowed me to argue to the jury that there was a connection between the site of the shooting, Mr. Atkinson's homosexuality, and the sexual abuse Mr. Miles suffered as an adolescent. This evidence of abuse and the connections to the victim Mr. Atkinson and the site of the shooting would have materially enhanced the defense mitigation case and could have persuaded the jury to spare Mr. Miles from the death penalty. It would also have been useful in attempting to persuade the State not to seek the death penalty, although the State indicated prior to trial that based on the evidence before it no deal was possible to spare Mr. Miles from the death penalty.

8. In retrospect, based on information known prior to trial and today, Mr. Miles should have been interviewed prior to trial by Dr. Bellow or one or more additional qualified mental health professionals more than once in an effort to further determine the origin of the pathologies I learned about prior to trial. It was recognized then prior to trial and is recognized today that multiple interviews, conducted by more than one mental health professional, are more likely to uncover information abuse victims are reluctant to disclose due to the painful memories disclosing such information trigger in abuse victims.

9. This is a summary and there are more details I can provide.

Dated: June 7, 2012

_____
Thomas J. Saunders

2