## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

### FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS
### UNDER 28 U.S.C. §2254

| | |
|---|---|
| JODY LEE MILES | * |
| | * |
|     Petitioner | * |
| v. | *   Civil Action No: CCB-07-2135 |
| Bobby P. Shearin, Warden, NBCI | * |
| | * |
|     Respondent | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS
### AND REQUEST FOR HEARING

Petitioner, Jody Lee Miles, who is presently incarcerated, through Robert W. Biddle, Nathans & Biddle, LLP, and Erika Alsid Short, Chason Rosner Leary and Marshall LLC, petitions this Honorable Court, pursuant to 28 U.S.C. §2254, for a hearing and an order vacating his convictions and sentences imposed in the Circuit Court for Queen Anne's County, Maryland. This is a timely amended petition filed pursuant to prior orders of this Court.

1

## PROCEDURAL BACKGROUND

1.    Petitioner was indicted and charged on May 9, 1997, of felonious homicide, robbery, robbery with a deadly weapon, first-degree assault and use of a handgun in a crime of violence in connection with the April 2, 1997, death of Mr. Edward Atkinson in Mardela Springs, Wicomico County, Maryland.   Based on a Suggestion of Removal, the case was removed from the Circuit Court for Wicomico County to the Circuit Court for Queen Anne's County, Centerville, Maryland (Criminal Case No. 4789/100 Court House Square, Centreville, Maryland 21617) on October 2, 1997, after the State of Maryland filed a Notice of Intention to Seek the Death Penalty on July 29, 1997.

2.    Petitioner entered a plea of Not Guilty.   On March 9, 1998, a jury was selected and trial lasted from March 9, 1998 until March 12, 1998, at which time the jury acquitted Petitioner of first-degree premeditated murder, but convicted him of felony murder, robbery with a deadly weapon, robbery and use of a handgun in the commission of a crime of violence.

3.    A capital sentencing hearing was held from March 17-18, 1998, and shortly after midnight on March 19, 1998, Petitioner was sentenced to death.  Petitioner filed a Motion for a New Trial and New Sentencing Hearing on March 26, 1998 and a hearing

was held on May 7, 1998. The Motion was denied by the Circuit Court for Queen Anne's County on July 7, 2000.

4.     Petitioner timely appealed his convictions to the Court of Appeals of Maryland. The Court of Appeals of Maryland affirmed the convictions in a reported decision filed on September 18, 2001. *Miles v. State*, 365 Md. 488, 781 A.2d 787 (No. 42, Sept. Term, 1998). All grounds raised on direct appeal are contained in the published opinion. Petitioner subsequently filed a Petition for Writ of Certiorari with the United States Supreme Court (Petition No. 01-7395), which was denied on February 25, 2002.

5.     On September 19, 2002, Petitioner, through counsel, filed a Petition for Post-Conviction Relief (Case No. CR4789) in the Circuit Court for Queen Anne's County, Maryland. A Supplemental Petition was filed on January 9, 2006. The post-conviction hearing was held in the Circuit Court of Maryland for Kent County on June 22-23, 2006. Post-hearing Memoranda were filed by both parties. The detailed grounds and issues raised by Petitioner, and decided by the Circuit Court for Kent County, were identified in the Memorandum Opinion and Order of The Honorable J. Frederick Price attached as Ex. 1 to the Initial Petition. The Post-Conviction Court denied the Petition by Memorandum Opinion and Order filed on August 21, 2006. On August 29, 2006, Petitioner filed a Motion to Alter or Amend Judgment, which was denied by the Circuit Court for Kent County on September 27, 2006.

6.    On October 25, 2006, Petitioner filed an Application for Leave to Appeal from the Denial of Post-Conviction Relief and unopposed Motion for Leave to Supplement Application for Leave to Appeal to the Court of Appeals of Maryland. On October 26, 2006, the Court of Appeals of Maryland granted Petitioner's Motion to Supplement the Application for Leave to Appeal within sixty days.    Petitioner subsequently filed a Supplement to Application for Leave to Appeal on December 18, 2006, a Supplemental Citation of Authority on January 9, 2007, and a Second Supplemental Citation of Authority on January 24, 2007.  The State of Maryland filed an Opposition to the Application for Leave to Appeal on February 15, 2007.  The Court of Appeals of Maryland denied Petitioner's Application for Leave to Appeal in a one page Order dated March 13, 2007.

7.    Petitioner filed a Petition for Writ of Certiorari with the United States Supreme Court on June 11, 2007 (Petition No. 06-12087) that was denied on October 1, 2007.

8.    Petitioner timely filed his initial Petition for post conviction relief on August 13, 2007, ECF # 1. Counsel filed a Motion for Stay and Abeyance, ECF # 2, which was supplemented on December 11, 2007, ECF #7. Proceedings on the initial Petition were stayed pursuant to a paperless order entered by Judge Davis of this Court on March 2, 2008, ECF #9. That stay was amended by an Order of this Court filed on

4

May 11, 2012, ECF #41. Pursuant to an agreement with the State and this Court's Order filed on September 10, 2013, ECF #53, this Amended Petition is timely filed.

9.    The stay has been entered in this case to allow Petitioner to exhaust his State remedies as required by federal law. Petitioner is grateful to the Court for entering the stay. As set forth below, Petitioner has now exhausted his federal claims in State court that were the basis of the original stay entered by Judge Davis in 2008.

10.    In August, 2007, Petitioner, by counsel, filed A Motion to Reopen and Memorandum of Law in Support in the Circuit Court for Queen Anne's County (Case No. CR4789). This Motion to Reopen raised for the first time issues related to the sexual abuse inflicted upon Petitioner by Charles Stevenson, while Stevenson was a family friend of Petitioner's family and Petitioner was an adolescent in the early 1980's *(check dates)*. This abuse related directly to Petitioner's conduct at the time of the shooting. Counsel also contemporaneously filed in the Circuit Court for Queen Anne's County, Maryland a Motion to Correct Illegal Sentence (Case No. CR4789), contending that the Maryland death penalty statute failed to require a jury imposing a sentence of death to decide whether or not the aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt.

11.    The Motion to Reopen Was Denied by the Circuit Court on January 4, 2008, and the Application for Leave to Appeal from the denial was denied by the

Maryland Court of Appeals on April 9, 2008. In the meantime, counsel's investigation of the Charles Stevenson issues continued.

12. The Circuit Court denied the Motion to Correct Illegal Sentence on January 3, 2008, and the Maryland Court of Appeals affirmed that denial by a decision on direct appeal, *Miles v. State*,  421 Md. 596, *cert. denied*, 132 S. Ct. 1743 (2012). On July 20, 2011, counsel for Petitioner filed a motion to correct illegal sentence on the basis that Maryland's death penalty violates the sanguinary laws provision of the Maryland Declaration of Rights. After hearing argument on February 15, 2012, that motion was denied by the Circuit Court on May 3, 2012, and is currently pending before the Maryland Court of Appeals. Further discussion of this state law claim is set forth below.

13.      Meanwhile, on June 18, 2012, counsel for Petitioner filed a Second Motion to Reopen in the Circuit Court for Queen Anne's County, related to additional evidence of the sexual abuse Charles Stevenson inflicted on Petitioner that had been obtained during the pendency of this case. That Second Motion to Reopen was denied by the Circuit Court on October 31, 2012, *see* Ex, 1 attached, and the Application for Leave to Appeal from that denial was denied by the Maryland Court of Appeals on July 5, 2013. Both denials of relief on the motions to reopen by the Maryland Court of Appeals were without any explanation of the court's reasoning.

14.      At the time when Petitioner's most recent Application for Leave to Appeal was denied by the Maryland Court of Appeals in July 2013, Petitioner had exhausted

6

the federal claims in State court which were the basis of the original stay entered by Judge Davis in March 2008. However, his State post-conviction proceedings have not ended in State court as the attack on Maryland's death penalty statute based on the provision in the Maryland Declaration of Rights prohibiting sanguinary laws referenced above in paragraph 12 is still pending before the Maryland Court of Appeals (Case #36, Sept Term 2012). Oral argument was heard on January 3, 2013, and additional supplemental briefing has been filed in the Court of Appeals in the past few months. A decision has not yet been entered.

16.     Furthermore, due to the collateral impact of the new Maryland death penalty repeal statute, 2013 Md. Laws 156, 2013 Md. Chap. 156 (available on Lexis and Westlaw), effective October 1, 2013, on Petitioner, a new set of federal constitutional claims are now before the state courts, *see* attached Ex. 8. These federal constitutional claims did not accrue until the effective date of the Maryland repeal statute (October 1, 2013), and they must be resolved in state court before the current stay is lifted and this case moves forward. The State has been directed by the Circuit Court to respond to this motion by October 14, 2013, *see* Ex. 8. The unexhausted federal constitutional claims set forth in Ex. 8 are incorporated as if set forth herein and should be subject to the present stay to allow their exhaustion in state court.

17.    The Original Petition was filed within the one year limitations period set forth in 28 U.S.C. §2244(d), and was subject to a stay. This Amended Petition is timely filed pursuant to law including orders of this Court.

18.    Petitioner did not testify at a pretrial hearing, trial or post-trial hearing. Petitioner did provide an allocution during the sentencing hearing.

19.    As previously noted, Petitioner's Initial Petition in this case has been pending for seven years, having been first stayed in March, 2008.

20.    Petitioner was represented at trial and sentencing by Thomas Saunders, Esquire (3600 Clipper Mill Road, Suite 201, Baltimore, Maryland 21211), Archibald McFadden, Esquire (201 Baptist Street, Salisbury, Maryland 21801) and Frank Draper, Esquire (100 S. Charles Street, Suite 1100, Tower II Baltimore, Maryland 21201). He was represented in his direct appeal to the Court of Appeals of Maryland by Nancy Forster, Esquire (925 Metfield Road, Towson, Maryland 21286), Stephen E. Harris, Esquire (1420 N. Charles Street, Baltimore, Maryland 21201), Arthur A. Delano, Jr., Esquire (412 Old Trail, Baltimore, Maryland 21212) and Elisa A. Long, Esquire (address unknown). In post-conviction proceedings, Petitioner has been represented by David Walsh Little, Esquire (address unknown), William Kanwisher, Esquire (retired from the practice of law), employed at the Federal Public Defender, 100 S. Charles Street, Suite 1100, Tower II Baltimore, Maryland 21201, Fred Warren Bennett, Esquire (deceased) and undersigned counsel.

21.     In this Amended Petition, Petitioner raises the following challenges to the constitutional validity of his convictions.  The detailed facts supporting these challenges are set forth below, in the attachments to this Amended Petition, or in the previously filed attached Motion and Memorandum of Law Seeking Stay and Abeyance, ECF #2, and Supplement, ECF # 7.  Further legal authority will be further set forth in a later to be filed Supplemental Memorandum of Law.  For ease of reference, claims exhausted on direct appeal to the Court of Appeals of Maryland, either in the initial direct appeal from the judgment and conviction, or on direct appeal from the denial of a motion to correct illegal sentence,  are identified with a "*"; claims exhausted on Application for Leave to Appeal to the Court of Appeals of Maryland from the Circuit Court for Kent County or the Circuit Court for Queen Anne County's Denials of Post-Conviction Relief are identified by a "^".

- **A.** **EXHAUSTED INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS: THE DECISION OF THE STATE COURTS THAT PETITIONER WAS AFFORDED THE EFFECTIVE ASSISTANCE OF COUNSEL PURSUANT TO THE SIXTH AMENDMENT RUNS CONTRARY TO, OR INVOLVED, AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED SUPREME COURT LAW AND/OR WAS AN UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE PRESENTED. THE EXAMPLES OF THIS INEFFECTIVE ASSISTANCE OF COUNSEL INCLUDE THE FOLLOWING ITEMS:**

  1.  Trial Counsel Rendered Ineffective Assistance of Counsel Which Prejudiced Petitioner By Failing To Request An Afterthought Robbery Instruction When It Was Counsel's Main Theory Of The Case, He Argued It In Closing Argument To The Jury, And It Was The Majority Rule in Neighboring Jurisdictions (^);

9

*The record is clear that, in closing argument, trial counsel argued afterthought robbery but failed to request an instruction to support this theory of the case. Following Petitioner's trial, the Court of Appeals of Maryland decided State v. Allen, 387 Md. 389 (2005) and held that a robbery afterthought instruction is required where there is evidence to support that theory of the case. The post-conviction court denied relief to Petitioner on the basis that trial counsel requested an instruction that was consistent with Maryland law at the time of trial and relied upon State v. Hunter, 103 Md.App. 620 (1995) for the proposition that the law does not require a lawyer to anticipate changes in the law. Trial counsel testified that he was aware of the theory of afterthought robbery, that it was the majority rule in other jurisdictions and that he argued it in closing based upon evidence presented at trial supportive of the theory. Trial counsel's failure to request an instruction (which, admittedly would likely have been denied by the trial court) precluded appellate review on the issue. The post-conviction court unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis in light of the evidence presented on this issue.*

2.    Trial Counsel Rendered Ineffective Assistance Of Counsel Which Prejudiced Petitioner In Failing To Object To The Court's Instruction On Felony Murder Predicated On Robbery In Light Of *State v. Allen* (^);

*Trial counsel's failure to object to the trial court's instruction on felony murder in light of the theory of afterthought robbery was deficient performance that prejudiced Petitioner. The post-conviction court unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis in light of the evidence presented on this issue.*

3.    Trial Counsel Rendered Ineffective Assistance Of Counsel Which Prejudiced Petitioner In Failing To Object To The Prosecutor's Rebuttal Closing Argument When The Prosecutor Incorrectly Stated The Law On Robbery As A Predicate For Felony Murder In Light of *State v. Allen* (^);

*Trial counsel was ineffective in failing to object to the prosecutor's rebuttal closing argument when the prosecutor incorrectly stated the law on robbery as a predicate for felony murder because he was aware of caselaw in the majority of jurisdictions regarding afterthought robbery,*

10

*and had adopted it as his main defense in the case. The post-conviction court unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis in light of the evidence presented on this issue.*

4.   Petitioner Was Denied The Effective Assistance Of Counsel In The Guilt/Innocence Phase Where Trial Counsel Failed To Request An Individual *Voir Dire* Of All Of The Seated Jurors, And Failed To Make An Appropriate Factual Record When Evidence Was Presented That Jurors Observed Petitioner In Leg Shackles And Handcuffs Outside The Courtroom (^);

*When trial counsel learned that members of the jury saw Petitioner in shackles outside of the courtroom, he moved for a mistrial (which was denied), but failed to request that all seated jurors be questioned about what they had or had not seen and to determine the effect of their observations. Trial counsel testified at post-conviction that his failure to make this request was not a trial tactic or strategy. Petitioner was prejudiced because there was a distinct possibility that jurors that saw Petitioner, or were told by other jurors, viewed him as a dangerous man that needed to be shackled. The post-conviction court unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in finding that trial counsel's decision not to make the request was "reasoned" in light of the evidence presented.*

5.   Petitioner Was Denied The Effective Assistance Of Counsel During The Guilt/Innocence Phase Where Trial Counsel Failed To Request The Trial Court To Inquire Of All Venirepersons Whether They Would Give More Or Less Credibility To The Testimony Of A Police Officer In A Case Where The Most Damaging Piece Of Evidence Was Petitioner's Own Statement Taken By Law Enforcement Officers (^);

*The trial record reflects that four seated jurors were among a group of eleven venirepersons that were not asked whether they would give more or less weight to the testimony of a police officer than to any other witness. At the post-conviction hearing, trial counsel admitted that the court advised him that it had failed to propound the question and that he did not, in light of the court's statement, request that it be given. Trial counsel explained at the post-conviction hearing that he made a conscious decision regarding each of the four jurors and to not pursue the omitted*

11

*voir dire. The post-conviction court found that while, under* <u>Strickland</u>, *counsel's conduct could arguably meet the first prong, there was no evidence presented that the deficiency prejudiced Petitioner. The post-conviction court unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in finding Petitioner was not prejudice in light of the evidence presented including the fact that police officers took Petitioner's incriminating statement and testified regarding various investigations conducted. The prejudice to Petitioner in trial counsel's failure is seen in the fact that it caused Petitioner to be deprived of the right to develop information that could have led to either a challenge for cause or to the sound exercise of peremptory challenges.*

6.  Petitioner Was Denied The Effective Assistance Of Counsel During The Guilt/Innocence Phase Where Trial Counsel Gave A Pro-Forma Opening Statement And Failed To Present Any Theory Of The Case (^);

    *The record is clear that trial counsel gave, at best, a brief pro-forma opening statement that did not present any theory of the case or argument regarding the facts. Trial counsel, at post-conviction, testified that he did so because he did not want his opening statement to contradict with later testimony because Petitioner had previously given him two different versions of what happened. Regardless of what Petitioner had told trial counsel, trial counsel knew that the State would introduce evidence of a bizarre statement of the Petitioner that fully set up a defense of "afterthought robbery", trial counsel's main defense in the case. The post-conviction court unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in light of the evidence presented.*

7.  Petitioner Was Denied Effective Assistance Of Counsel Where Trial Counsel Failed To Effectively Cross-Examine An Important Witness Called On Behalf Of The State, Jona Miles (^);

    *The record is clear that trial counsel's cross-examination of the State's key witness, Petitioner's ex-wife, Jona Miles, was perfunctory at best. He did not ask questions regarding her waiver of the marital privilege, which would have shown the jury her alignment with the State. He never used the docket entries to show that her own case where she was charged with accessory after the fact was being delayed while Petitioner's case was*

*moving rapidly ahead. Trial counsel also never questioned Mrs. Miles' regarding the fact that she had been released on bond with the consent of the State. At post-conviction, trial counsel testified that he questioned Mrs. Miles about a "deal" with the State and she responded that she did not have any such agreement and further explained that any further examination could appear to the jury as attempting to shift blame. The post-conviction court unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in light of the evidence presented in finding that trial counsel's decisions constituted valid trial tactics under the first prong of Strickland.*

8.    Trial Counsel Rendered Ineffective Assistance Of Counsel Which Prejudiced Petitioner In Failing To Cross-Examine The Victim's Brother, Robert Atkinson, Regarding His Altering Or Tampering With Petitioner's Phone Records (^);

*The record is clear that, at the time of trial, trial counsel was in possession of documentation that the victim's brother, Robert Atkinson, with the assistance of a Verizon employee, was involved in tampering with and altering Petitioner's phone records by changing Petitioner's billing address to Atkinson Trucking Co., a business owned by the victim's family and obtaining a copy of the records of Petitioner's phone calls on the date of the murder. Mr. Atkinson was an important witness for the State as he was the first individual to come into contact with the majority of the State's circumstantial evidence against the Petitioner. Despite trial counsel's knowledge of the alteration of the phone records and the ability to impeach a major State witness, trial counsel asked Mr. Atkinson not a single question. The post-conviction court unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in light of the evidence presented in finding that, because the phone records did not help Petitioner trial counsel's decision not to cross-examine Mr. Atkinson was reasonable.*

9.    Trial Counsel Rendered Ineffective Assistance Of Counsel Which Prejudiced Petitioner In Failing To Object To The Prosecutor's Opening And Closing Arguments (^);

*Trial counsel failed to object to the prosecutor's opening and closing arguments with respect to specific improper statements, including that the prosecutor "took an oath of office to protect the people of Wicomico*

13

*County". Petitioner contends that this was an improper appeal to the emotions of the jury, an improper vouching of his own credibility and created an improper inference that he was protecting the people by prosecuting Petitioner, thereby creating prejudice. At post-conviction, trial counsel testified that he did not object because he thought the statements were within the range of argument. The post-conviction court unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in light of the evidence presented in finding that trial counsel's decision was a tactical one.*

10. Trial Counsel Rendered Ineffective Assistance Of Counsel Which Prejudiced Petitioner In Failing To Investigate And Present Important Mitigation Evidence In Support Of A Sentence Other Than Death And Of Petitioner's Relationship With Family And The Impact Of Execution (^);

*The record is clear that trial counsel presented an abysmal mitigation case on behalf of Petitioner and utterly failed to investigate and present important mitigating evidence. Trial counsel called four witnesses at mitigation, only one of them being a family member. Even with that witness, trial counsel asked only general questions. At post-conviction, eight additional witnesses testified in support of mitigation, including five family members and a close personal friend, a correctional officer that had personal recollection of Petitioner and an expert in the area of future dangerousness. None of these witnesses were called at the original sentencing hearing, although all of them were willing and able to testify. Several of the witnesses were never even investigated or interviewed by trial counsel. The post-conviction court unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in light of the evidence presented. Specifically, with regard to several witnesses, the post-conviction court relied upon absolutely inaccurate facts as the basis for its finding that trial counsel was not ineffective. Moreover, the post-conviction court improperly relied solely upon the testimony of Mr. Saunders, rather than the conflicting testimony of Mr. McFadden who was the actual attorney responsible for the investigation and presentation of Petitioner's mitigation case. While the post-conviction court paid lip service to the standards of Strickland and its progeny, it failed to correctly apply the standard. The post-conviction court failed to take into account all mitigating evidence that*

14

*was presented in assessing prejudice as required under Strickland and Wiggins.*

11.    Trial Counsel Rendered Ineffective Assistance Of Counsel Which Prejudiced Petitioner In Failing To Fully Investigate And Present Evidence Regarding Steve Bailey Whose Testimony Regarding A Second Suspect Could Have Raised Residual Doubt (^);

*Trial counsel failed to investigate and call an independent witness, Steve Bailey. Mr. Bailey testified at the post-conviction hearing that, on the date of and around the time of the murder, he was driving on Old Bradley Road when he saw two cars and one woman in the wooded area where the victim was shot. Mr. Bailey provided a description of the woman that matches that of Mary Snively, Jona Miles' roommate, and testified that her demeanor appeared to be unusual. At post-conviction, trial counsel explained this failure by indicating that while Mr. Bailey did present evidence of a second suspect at the scene of the crime, the evidence did not place the person at the scene when the murder occurred. The post-conviction court unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in relying upon counsel's statement in this regard when it is factually contradicted by the record and Mr. Bailey's actual testimony.*

12.    Trial Counsel Rendered Ineffective Assistance Of Counsel Which Prejudiced Petitioner In Failing To Inspect The Jurors' Note Sent To The Court During Deliberation Which Contained Language Indicating A Potential Jury Deadlock In Order To Preserve The Opportunity To Request An Allen-Type Charge (^);

*At the post-conviction hearing, trial counsel stated that he made three requests to inspect the jury note, but never received the note from the Court. Trial counsel conceded that had he actually inspected the note, he would have taken some alternative action on behalf of Petitioner. Petitioner contends that, because the jury was split 9-3 at the time of the note, trial counsel should have requested a modified Allen charge or requested a mistrial. Trial counsel's failure to do so amounted to prejudice to Petitioner in that there is a reasonable probability that the outcome would have been different. While the post-conviction court found that Petitioner met the first prong of Strickland, and found that Petitioner's argument on the prejudice prong was compelling, it nonetheless found no prejudice. The post-conviction court unreasonably applied established*

15

*Supreme Court law and made an unreasonable determination of the facts in its analysis in light of the evidence presented on this issue.*

13.   Trial Counsel Rendered Ineffective Assistance Of Counsel Which Prejudiced Petitioner In Failing To Request That The Court Instruct The Jury That It May Consider Petitioner's Allocution As Evidence In Support Of Mitigation (^);

*Trial counsel failed to request, during the sentencing phase, that the court instruct the jury to consider Petitioner's allocution as evidence in support of mitigation. This failure resulted in prejudice to Petitioner because the jury was never provided any direction by the court that they could consider Petitioner's allocution as evidence. To suggest that jurors were aware of Lockett v. Ohio and the effect of the requirement under the Eighth and Fourteenth Amendments and implicitly understood that they were permitted to consider non-statutory mitigators such as the allocution is unreasonable. The post-conviction court, noting that it is arguable that trial counsel should have requested a specific instruction, found that Petitioner did not suffer prejudice because the jury took the allocution into consideration on the basis that at least one juror viewed Petitioner's remorse as a mitigating factor. The post-conviction court unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in finding in light of the evidence presented.*

14.   Trial Counsel Rendered Ineffective Assistance Of Counsel Which Prejudiced Petitioner In Failing To Object When The Court Instructed The Jury That Their Decision Must Be Based On The "Evidence" When Under *Lockett* And Its Progeny, The Law Allows For Mitigating Factors Outside The Scope Of Evidentiary Foundation, Including Petitioner's Allocution (^);

*Trial counsel failed to object when the court instructed the jury that their decision must be based on the "evidence" when, under Lockett and its progeny, the law allows for mitigating factors outside the scope of evidentiary foundation, including the Petitioner's allocution. The trial court provided contradictory, ambiguous and improper direction to the jury in this regard. Trial counsel was charged with the duty to raise an objection. As a result of trial counsel's failure, the jury likely acted on the repeat instruction of the court that they may only consider the evidence presented, which effectively precluded consideration of Petitioner's*

16

*allocution. Had trial counsel objected, there is a reasonable probability that the jury would have reached a lesser sentence. The post-conviction court unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in light of the evidence presented.*

15. Trial Counsel Rendered Ineffective Assistance Of Counsel Which Prejudiced Petitioner In Failing To Object When The Court Instructed The Jury, After Seven Hours Of Deliberation, That Unanimity Was Required For A Verdict When Maryland Law Provide For A "Hung" Sentencing Jury, At Which Point The Judge May Impose An Alternate Sentence To Death (^);

*Trial counsel failed to object when the court instructed the jury, after over seven hours of deliberation, that unanimity is absolutely required for a verdict when the law provides for a "hung" sentencing jury. The question posed by the jury clearly signaled that they were either deadlocked or confronting difficulty reaching a unanimous decision (the question presented by the jury was "if we are not unanimous, do we enter no automatically or do we need to be unanimous that no is the answer?" and "how can we answer this question if we were not unanimous on the no vote?"). At post-conviction, trial counsel conceded that the note gave a clear indication to him that the jury was potentially hanging and that his judgment was faulty in failing to inspect the note and, but for such failure, he would have requested a modified Allen charge. Further, trial counsel conceded that, had he actually inspected the note, the need to object to the court's re-instruction would have been evident. The post-conviction court unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in finding that, while trial counsel's actions fell below an objective standard of reasonableness under* Strickland, *Petitioner was not prejudiced in light of the evidence presented.*

16. Trial Counsel Rendered Ineffective Assistance Of Counsel Which Prejudiced Petitioner In Failing To Raise The Argument That The Jury's Verdict Was Inconsistent And In Failing To Request That The Jury Be Polled to Determine If The Verdict Reflected The Considered Judgment Of Each Juror (^);

*Trial Counsel failed to request that the jury be polled to determine if the verdict reflects the judgment of each juror and should have raised the*

17

*argument that the jury's verdict was inconsistent. At post-conviction, trial counsel testified that he did not poll the jury because the sentencing form explained how the jury arrived at its verdict. However, the sentencing form did not indicate if the verdict reflected the considered judgment of each individual juror and Petitioner was prejudiced as a result. The post-conviction court unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in light of the evidence presented.*

17.    Trial Counsel Rendered Ineffective Assistance Of Counsel Which Prejudiced Petitioner By Failing To Retain An Expert In The Area Of Future Dangerousness And Failed To Adequately Investigate And Present To The Jury Other Evidence Of Mitigation (^);

*The record is clear that trial counsel presented an abysmal mitigation case on behalf of Petitioner and utterly failed to investigate and present important mitigating evidence. Trial counsel called four witnesses at mitigation, only one of them being a family member. Even with that witness, trial counsel asked only general questions. At post-conviction, eight additional witnesses testified in support of mitigation, including five family members and a close personal friend, a correctional officer that had personal recollection of Petitioner and an expert in the area of future dangerousness. None of these witnesses were called at the original sentencing hearing, although all of them were willing and able to testify. Several of the witnesses were never even investigated or interviewed by trial counsel. The post-conviction court unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in light of the evidence presented. Specifically, with regard to several witnesses, the post-conviction court relied upon absolutely inaccurate facts as the basis for its finding that trial counsel was not ineffective. Moreover, the post-conviction court improperly relied solely upon the testimony of Mr. Saunders, rather than the conflicting testimony of Mr. McFadden who was the actual attorney responsible for the investigation and presentation of Petitioner's mitigation case. While the post-conviction court paid lip service to the standards of Strickland and its progeny, it failed to correctly apply the standard. The post-conviction court failed to take into account all mitigating evidence that was presented in assessing prejudice as required under Strickland and Wiggins.*

18

18.  Trial Counsel Rendered Ineffective Assistance Of Counsel Which Prejudiced Petitioner By Failing To Present Mitigation Evidence By Way Of Lay Witness Testimony Regarding Petitioner's Lack Of Future Dangerousness (^);

*The record is clear that trial counsel presented an abysmal mitigation case on behalf of Petitioner and utterly failed to investigate and present important mitigating evidence. Trial counsel called four witnesses at mitigation, only one of them being a family member. Even with that witness, trial counsel asked only general questions. At post-conviction, eight additional witnesses testified in support of mitigation, including several lay witnesses. None of these witnesses were called at the original sentencing hearing, although all of them were willing and able to testify Each witness testified in detail to Petitioner's lack of propensity for future dangerousness. Several of these witnesses were never even investigated or interviewed by trial counsel. The post-conviction court unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in light of the evidence presented. Specifically, with regard to several witnesses, the post-conviction court relied upon absolutely inaccurate facts as the basis for its finding that trial counsel was not ineffective. Moreover, the post-conviction court improperly relied solely upon the testimony of Mr. Saunders, rather than the conflicting testimony of Mr. McFadden who was the actual attorney responsible for the investigation and presentation of Petitioner's mitigation case. While the post-conviction court paid lip service to the standards of Strickland and its progeny, it failed to correctly apply the standard.*

19.  Trial Counsel Rendered Ineffective Assistance Of Counsel Which Prejudiced Petitioner Where Trial Counsel Failed To Object To The Trial Court's Instruction On The Sole Aggravating Circumstance, Robbery, And When the Trial Court Failed To Instruct The Jury That An "Afterthought Robbery" Did Not Qualify As An Aggravating Circumstance (^);

*The Court instructed the jury that a murder in the course of a robbery was an aggravating factor it could consider in deciding whether to impose the death penalty. Trial counsel failed to preserve an objection to that instruction because the instruction allowed the jury to impose the death penalty without finding that the defendant intended to commit a murder. The absence of the instruction prejudiced the defendant. The post-*

19

*conviction court unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in light of the evidence presented. Similarly, defense counsel failed to ask for an instruction requiring acquittal where the jury concluded that the intent to rob only arose after the victim died. The post conviction court similarly erred in denying relief on the absence of such an instruction.*

20.    Appellate Counsel Rendered Ineffective Assistance Of Counsel Which Prejudiced Petitioner By Failing To Raise On Appeal The Issue That The Prosecutor Made Inappropriate And Prejudicial Arguments In Closing And Urged The Jury To Consider Inappropriate Factors As Reasons For A Sentence Of Death (^);

*Appellate counsel failed to raise on direct appeal the issue that the prosecutor made inappropriate and prejudicial arguments during closing and, at sentencing, improperly urged the jury to consider inappropriate facts as reasons for a sentence of death in weighing aggravating factors against mitigating factors. The post-conviction court unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in light of the evidence presented in finding that this was a reasonable "tactical" decision of appellate counsel and that Petitioner was not prejudiced.*

21.    Appellate Counsel Rendered Ineffective Assistance Of Counsel Which Prejudiced Petitioner By Failing To Argue That The Death Sentence Should Be Vacated Because There Was Insufficient Evidence To Support A Robbery Concurrent With The Murder In Light Of *Metheny v. State*, 576 Md. 576 (2000), Decided Prior To The Maryland Court Of Appeals' Decision In Petitioner's Case (^);

*Appellate counsel failed to argue, in light of <u>Metheny v. State</u>, that Petitioner's death sentence should be vacated because there was insufficient evidence to support a robbery concurrent with murder. This failure is particularly apparent because <u>Metheny</u> was decided well before the Maryland Court of Appeals decided Petitioner's case and was available to appellate counsel.  Had appellate counsel raised <u>Metheny</u>, there is a reasonable probability that the outcome would have been different. The post-conviction court unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in light of the evidence presented.*

20

22. Trial Counsel Rendered Ineffective Assistance Of Counsel Which Prejudiced Petitioner By Failing To Have An Employee Of The Maryland Parole Commission Testify To Explain "Life Without The Possibility Of Parole" (^);

*Trial counsel failed to have an employee of the Maryland Parole Commission testify to explain to the jurors the real meaning and implications of "life without the possibility of parole". At post-conviction, the State argued that the term "life without the possibility of parole" is self-explanatory. In the absence of testimony in this regard, however, the jury was left to reach its own conclusions, whatever they might have been One or more jurors could have reasonably believed, based on personal life knowledge, that the term "life without the possibility of parole" doesn't really mean what it says in actual application and that Petitioner would have an opportunity for parole at some point down the road. The testimony of a witness from the Maryland Parole Commission would have provided the jury with clear direction. The post-conviction court unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in light of the evidence presented in finding that trial counsel's performance in this regard was not unreasonable and that there was no prejudice to Petitioner.*

23. Trial Counsel Rendered Ineffective Assistance Of Counsel Which Prejudiced Petitioner By Failing To Move For Judgment Of Acquittal On Felony Murder (^).

*Trial counsel failed to move for a judgment of acquittal on the felony murder count in light of <u>Metheny v. State</u>. There was insufficient evidence that the robbery occurred during the commission of the murder as opposed to being an "afterthought robbery". The post-conviction court found that the record supported the jury's findings that Petitioner murdered the victim while committing or attempting to commit a robbery, but did not address the issue of the lack of evidence supporting a finding of intent to commit the robbery arising prior to, or concurrent with, the murder. The record reflects that, while the victim's car keys were taken, his vehicle, and several items of value inside the vehicle, were not. The record also reflects evidence that the meeting between Petitioner and the victim was not a chance encounter and was prearranged. The post-conviction court unreasonably applied established Supreme Court law and*

21

*made an unreasonable determination of the facts in its analysis on this issue in light of the evidence presented.*

24.    Failure To Adequately Assess Petitioner's Mental Health In That Trial Counsel Failed to Ensure That Necessary Psychological, Psychiatric, And Other Mental Health Related Investigations Of The Petitioner's Life, Including His Upbringing And Adolescence, And State Of Mind At The Time Of The Offense, Were Performed (^);

*Trial counsel failed to adequately assess Petitioner's mental health. Trial counsel provided ineffective assistance of counsel by failing to ensure that prior to trial Petitioner received a comprehensive mental health examination appropriate to the defense of a death penalty prosecution. This failure by trial counsel was a failure of pretrial and presentencing investigation. The facts supporting this claim are set forth in the memorandum of law, exhibits, and statements of Drs. Blumberg and Stevenson filed with the Motion and Memorandum, ECF#2, Document 2-3 (Motion to Reopen with Drs. Blumberg and Stevenson statements), and the Supplement, ECF # 7, Document 7-1, as well as the following additional exhibits attached to this Amended Petition. Report of Norris Howard dated January 3, 2008; Letter dated March 8, 2010, from Arch McFadden Esq. to Robert Biddle, Esq.; Memo dated March 8, 2010, from Norris Howard to Arch McFadden Esq. with enclosures; Statement of Howard C. Stevenson regarding Charles E. Stevenson, Jr.; Statement of Thomas J. Saunders, Esq.; Statement of Joanna D. Brandt. Dr. Blumberg's finding that the Petitioner suffered from PTSD at the time of the offense is a fact which there is a substantial and/or significant possibility that, if brought to the attention of the jury, would have, along with other new information previously presented to the state courts on the motions to reopen, resulted in a different sentence.*

B.    **OTHER EXHAUSTED CLAIMS: THE DECISION OF THE STATE COURTS DENYING RELIEF ON THESE CLAIMS RUNS CONTRARY TO, OR INVOLVED AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED SUPREME COURT LAW AND/OR WAS AN UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE PRESENTED.**

1.    The State Failed To Prove That Evidence Derived From An Illegal

22

Wiretap Did Not Constitute "Fruit Of The Poisonous Tree" Under The Attenuation Doctrine Of *Wong Sun v. United States*, 371 Md 471 (1963) And Its Progeny (*);

*As the result of an illegal wiretap, the Maryland State Police obtained evidence after having used an illegal recording made by a private citizen of a phone conversation between Petitioner and his ex-wife, Jona Miles. Evidence seized by the police, including pursuant to search warrants at Mrs. Miles' home, from Petitioner's car following his arrest, the alleged murder weapon and statements given to police by both Petitioner and Mrs. Miles were derived from the unlawful interception and constituted "fruit of the poisonous tree" under the attenuation doctrine of <u>Wong Sun v. United States</u> and its progeny. The Maryland Court of Appeals unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in light of the evidence presented.*

2.    In Violation Of The Eighth Amendment, There Were Ambiguities And Inconsistencies Present In The Sentencing Verdicts Which Require That Petitioner's Death Sentence Be Vacated (*);

*The combination of the contents of the third jury note indicating that they were deadlocked, the trial judge's problematic response and the inclusion of the statement "life imprisonment without parole is sufficient" by the jury in the sentencing form demonstrates that the jury arbitrarily imposed a sentence of death in Petitioner's case and requires that Petitioner's death sentence be vacated. The Maryland Court of Appeals unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in light of the evidence presented in finding that the record supports the jury's conclusion that the statutory aggravating circumstance outweighed the mitigating circumstances.*

3.    Four Potential Jurors Were Excluded From The Venire Panel In Violation Of The Sixth And Fourteenth Amendment Rights Under The Principles Established In *Witherspoon v. Illinois*, 391 U.S. 510 (1968), And *Morgan v. Illinois*, 504 U.S. 719 (1992) (*);

*The record reflects that the trial court conducted voir dire over the course of four days and excused four potential jurors from the panel, despite the fact that none of those jurors had clearly demonstrated through their answers that their views on the death penalty would prevent or*

23

*substantially impair their ability to serve as jurors. Such exclusion was a violation of Petitioner's Sixth and Fourteenth Amendment Rights. The Maryland Court of Appeals unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in light of the evidence presented.*

4.    Petitioner Was Impermissibly Seen In Shackles By Jurors On The Second Day Of Trial On March 10, 1998, In Violation Of The Sixth And Fourteenth Amendments Under The Principles Discussed In *Holbrook v. Flynn*, 475 U.S. 560 (*);

*The record is clear that, on the second day of trial, as Petitioner was walking by the jury room in leg and arm shackles, the door to the jury room was inadvertently left open. Trial counsel moved for a mistrial, but did not request that the jurors be polled to determine what they saw. On direct appeal, the Court of Appeals of Maryland determined that, because the jury was never polled to determine whether there was actual prejudice, an inference should not be made that jurors who may have witnessed Petitioner in shackles were biased. This impermissible viewing was a clear violation of the Sixth and Fourteenth Amendments under the principles discussed in* <u>Holbrook v. Flynn</u>. *The Maryland Court of Appeals unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in light of the evidence presented.*

5.    The Trial Court Failed To Disclose The Content Of A Note From The Jury Which Denied Petitioner Due Process Under The United States Constitution (*);

*At approximately 11:20 p.m., after seven hours of deliberation, the jury sent a note advising "if we are not unanimous, do we enter no automatically or do we need to be unanimous that no is the answer" and "how can we answer this question if we were not unanimous on the no vote". While the trial court provided its own summary of the note, it did not disclose the actual contents to trial counsel, which denied Petitioner due process under the United States Constitution. The Maryland Court of Appeals unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in light of the evidence presented.*

6.    The Trial Court Erred When It Instructed The Jury That Unanimity Was Required As To The Weighing Of Mitigating And Aggravating Factors Thereby Violating The Fifth, Eighth And Fourteenth Amendments (*);

*In both the original sentencing instructions and the re-instruction by the trial judge after receipt of the juror note seven hours into deliberations that "your determination. . . must be unanimous. This error violated Petitioner's Fifth, Eighth and Fourteenth Amendment rights.*

7.    In Violation Of The Eighth And Fourteenth Amendments, The Trial Court Improperly Restricted The Jury's Consideration Of Non-Statutory Mitigating Factors (*);

*The trial judge instructed the jury that "any factor which causes you to feel sympathy or mercy toward the defendant may be considered by you to be a mitigating factor, so long as such factors are supported by the evidence and are considered by you to be within the framework of the verdict sheet".    This instruction improperly restricted the jury's consideration of mitigating factors to those facts received in evidence in violation of the Eighth and Fourteenth Amendments. The Maryland Court of Appeals unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in light of the evidence presented.*

8.    In Violation Of Due Process, Arising From A Substantial Risk That A Sentence Of Death Would Be Imposed In An Arbitrary And Capricious Manner, The Trial Court Erred In Refusing To Give Petitioner's Requested Sentencing Instruction Relating To The Jury's Acquittal On The Premeditated Murder Count (*);

*The trial court refused to give Petitioner's requested sentencing instruction that the jury's finding that Petitioner was not guilty of premeditated murder is a mitigating factor that must be weighed and considered in reaching a determination of a sentence.    The Maryland Court of Appeals unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue, in light of the evidence presented, in finding that there was no error and Petitioner's due process rights were not violated because the jury was aware of the fact that Petitioner had been acquitted of premeditated*

25

*murder and a specific instruction to consider that fact as a mitigating factor was not required.*

9.     Inconsistencies In The Sentencing Findings Indicate An Arbitrary Imposition Of The Death Penalty In Violation Of The Eighth And Fourteenth Amendments Of The United States Constitution (*)

*The combination of the contents of the third jury note indicating that the jury had reached deadlock, the trial judge's problematic response to the note, and the inclusion of the statement "life imprisonment without parole is sufficient" by the jury in the sentencing form demonstrates that the jury arbitrarily imposed a sentence of death in Petitioner's case in violation of the Eighth and Fourteenth Amendments of the United States Constitution. The Maryland Court of Appeals unreasonably applied established Supreme Court law and made an unreasonable determination of the facts in its analysis on this issue in light of the evidence presented.*

10.     Pursuant To *Cunningham v. California,* 127 S. Ct. 856 (2007), Petitioner's Conviction And Sentence Violates The Sixth Amendment Because Maryland's Death Penalty Sentencing Scheme Allows Imposition Of A Sentence Of Death Upon A Determination That The Aggravating Factors Outweigh The Mitigating Factors By A Preponderance Of The Evidence, Rather Than Beyond A Reasonable Doubt. (*)

*The facts supporting this claim were previously set forth in the memorandum of law, exhibits, and statements filed with the Original Petition, specifically the motion to correct illegal sentence. The jury was instructed that it could impose a death sentence if it found that the aggravating factor outweighed the mitigating factors by a preponderance of the evidence, however the constitution as interpreted by the Supreme Court in <u>Cunningham</u> requires that the jury must make that finding by beyond a reasonable doubt. If they cannot make that finding by the constitutional standard, then a life sentence should be imposed. This issue has been heard and decided against Petitioner by the Maryland Court of Appeals, Miles v. State, 421 Md. 596, cert. denied, 132 S. Ct. 1743 (2012).*

26

## PRAYER FOR RELIEF

Petitioner respectfully requests that this Honorable Court grant the following relief:

1.    Once all claims are exhausted and the current stay is lifted, order Respondent to answer the allegations in this Petition;

2.    Conduct an evidentiary hearing on the substantive claims for relief set forth in this Petition;

3.    Issue a Writ of Habeas Corpus and Order that Petitioner be granted a new trial and/or sentencing hearing in a Circuit Court in the State of Maryland;

4.    Grant Petitioner such other and further just and equitable relief as justice may so require.

## CONCLUSION

For all of the foregoing reasons, Petitioner, Jody Lee Miles, respectfully requests that this Court grant the relief prayed for above.

Respectfully submitted,

/s/

_____

Robert W. Biddle (#10761)
Nathans & Biddle LLP
120 East Baltimore Street, Suite 1800
Baltimore, Maryland 21202
(410) 783-0272

27

/s/
_____

Erika Alsid Short (#26707)
Chason, Rosner, Leary & Marshall
LLC
401 Washington Avenue, Suite 1100
Towson, MD 21204
 (410) 494-3700

*Attorneys for Petitioner,*
JODY LEE MILES

Attachments

1.   Order of the Circuit Court filed on October 31, 2012, denying the Second Motion
     to Reopen on the Charles Stevenson abuse issues

2.   Report of Norris Howard dated January 3, 2008

3.   Letter dated March 8, 2010, from Arch McFadden Esq. to Robert Biddle, Esq.

4.   Memo dated March 8, 2010, from Norris Howard to Arch McFadden Esq. with
     enclosures

5.   Statement of Howard C. Stevenson regarding Charles E. Stevenson, Jr.

6.   Statement of Thomas J. Saunders, Esq.

7.   Statement of Joanna D. Brandt, MD

8.   Motion to Correct Illegal Sentence filed in the Circuit Court for Queen Anne's
     County, September 30, 2013, including Order of the Circuit Court requiring
     State's Response to be filed by October 14, 2013

I declare under penalty of perjury that the foregoing facts are true and correct to the best of my knowledge and belief.

Jody Lee Miles

Dated: Sept. 27, 2013

## CERTIFICATE OF SERVICE

It is on this 7th day of October, 2013, I certify that a copy of this document was served by efiling upon counsel for the State.

/s/

--------------------
Robert W. Biddle